SHORT RECORD
NO. 15-2868
FILED 8/31/15

**IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID RHEIN**, | ) | |
| | ) | No. 13 C 843 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Hon. Judge Gary Feinerman |
| | ) | |
| **LIEUTENANT JOHN COFFMAN**, | ) | Hon. Mag. Judge Young B. Kim |
| | ) | |
| Defendant. | ) | |

### NOTICE OF APPEAL

Notice is hereby given that David Rhein, the Plaintiff, hereby appeals to the United States

Court of Appeals from the judgment entered in this case on August 6, 2015.


/s/ Richard Dvorak
Richard Dvorak
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
(312) 593-7146
richard.dvorak@civilrightsdefenders.com
*Attorney for the Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2015, I electronically filed the foregoing with the
Clerk of the Court using CM/ECF system which will send notification to all persons with an
appearance on file in the above-captioned case.


/s/ Richard Dvorak
Richard Dvorak
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
(312) 593-7146
richard.dvorak@civilrightsdefenders.com
*Attorney for the Plaintiff*

**IN THE UNITED STATES DISTRICT COURT,**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID RHEIN**, | ) | |
| | ) | No. 13 C 843 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Hon. Judge Gary Feinerman |
| | ) | |
| **LIEUTENANT JOHN COFFMAN**, | ) | Hon. Mag. Judge Young B. Kim |
| | ) | |
| Defendant. | ) | |

### DOCKETING STATEMENT

1. The Plaintiff, David Rhein, invoked jurisdiction of the district court pursuant to 28 U.S.C. § 1343 to assert claims arising under 42 U.S.C. § 1983.  The Plaintiff invokes jurisdiction of this Court pursuant to 28 U.S.C. § 1291.

2. The district court granted Defendant John Coffman's motion for summary judgment, and denied the Plaintiff's cross motion for summary judgment, on August 6, 2015.

3. The Petitioner did not file any post-judgment motion and files his notice of appeal on August 28, 2015.

4. This is an appeal from a final judgment that adjudicates all of the claims with respect to all parties.

/s/ Richard Dvorak
Richard Dvorak
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
(312) 593-7146
richard.dvorak@civilrightsdefenders.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification to all persons with an appearance on file in the above-captioned case.

/s/ Richard Dvorak
Richard Dvorak
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
(312) 593-7146
richard.dvorak@civilrightsdefenders.com
*Attorney for the Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM RHEIN and DAVID RHEIN, | ) | |
| | ) | |
| Plaintiffs, | ) | 13 C 843 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| AGENT STEVEN PRYOR, Star Number 4816, an Illinois | ) | |
| State Police Officer, in his individual capacity; AGENT | ) | |
| FREDDIE SUMMERS, Star Number 5706, an Illinois | ) | |
| State Police Officer, in his individual capacity; | ) | |
| LIEUTENANT JOHN COFFMAN, an Illinois State Police | ) | |
| Officer, in his individual capacity; and HIRAM GRAU, | ) | |
| Illinois State Police Director, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kim Rhein and David Rhein bring this suit under 42 U.S.C. § 1983 against Agent Steven

Pryor, Agent Freddie Summers, and Lieutenant John Coffman of the Illinois State Police in their

individual capacities, and against Illinois State Police Director Hiram Grau in his official

capacity.  The official capacity claim alleges that § 8(f) of the Illinois Firearm Owners

Identification ("FOID") Card Act, which provides that the State Police may revoke a person's

FOID card upon finding that the person's "mental condition is of such a nature that it poses a

clear and present danger to the applicant, any other person or persons or the community," 430

ILCS 65/8(f), is facially unconstitutional.  Doc. 29.  The individual capacity claims allege that

the revocation of David's FOID card pursuant to § 8(f) and the seizure of David's and Kim's

firearms from their home violated the First, Second, Fourth, and Fourteenth Amendments.  *Ibid*.

The official capacity claim seeks injunctive and declaratory relief, while the individual capacity

claims seek damages.  *Id*. at ¶¶ 4, 6 and p. 6.  Defendants have moved to dismiss the amended

complaint.  Doc. 26.  The motion is granted as to the official capacity claim and denied as to the

individual capacity claims.

## Background

In considering the motion to dismiss, the court assumes the truth of the amended

complaint's factual allegations, though not its legal conclusions.  *See Munson v. Gaetz*, 673 F.3d

630, 632 (7th Cir. 2012).  The court also must consider "documents attached to the [amended]

complaint, documents that are critical to the [amended] complaint and referred to in it, and

information that is subject to proper judicial notice," along with additional facts set forth in

Plaintiffs' brief opposing dismissal, so long as those facts "are consistent with" the amended

complaint.  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  The following

facts are set forth as favorably to Plaintiffs as these materials allow.  *See Gomez v. Randle*, 680

F.3d 859, 864 (7th Cir. 2012).

The FOID Card Act provides that no person in Illinois "may acquire or possess any

firearm … within this State without having in his or her possession a Firearm Owner's

Identification Card previously issued in his or her name by the Department of State Police under

the provisions of this Act."  430 ILCS 65/2(a)(1).  Section 8(f) of the Act allows the Illinois

Department of State Police to "revoke and seize a [FOID] Card previously issued under this Act

… if the Department finds that the … person to whom such card was issued is or was at the time

of issuance: … [a] person whose mental condition is of such a nature that it poses a clear and

present danger to the applicant, any other person or persons or the community."  430 ILCS

65/8(f).  The Act recently was amended to define "clear and present danger" to mean "a person

who: (1) communicates a serious threat of physical violence against a reasonably identifiable

victim or poses a clear and imminent risk of serious physical injury to himself, herself, or another

person as determined by a physician, clinical psychologist, or qualified examiner; or (2)

demonstrates threatening physical or verbal behavior, such as violent, suicidal, or assaultive

threats, actions, or other behavior, as determined by a physician, clinical psychologist, qualified

examiner, school administrator, or law enforcement official." 430 ILCS 65/1.1.

If a person's FOID card is revoked pursuant to § 8(f), the Department must provide the

individual with "a written notice … stating specifically the grounds upon which … his

Identification Card has been revoked … [and setting forth] the person's right to administrative or

judicial review under Section 10 and 11 of this Act." 430 ILCS 65/9. Section 10 states that a

person whose FOID card is revoked "may appeal to the Director of State Police for a hearing

upon such … revocation." 430 ILCS 65/10(a). Section 10 further provides:

> The Director shall grant the relief if it is established by a preponderance of the
> evidence that the person will not be likely to act in a manner dangerous to
> public safety and that granting relief would not be contrary to the public
> interest. In making this determination, the Director shall receive evidence
> concerning (i) the circumstances regarding the firearms disabilities from
> which relief is sought; (ii) the petitioner's mental health and criminal history
> records, if any; (iii) the petitioner's reputation, developed at a minimum
> through character witness statements, testimony, or other character evidence;
> and (iv) changes in the petitioner's condition or circumstances since the
> disqualifying events relevant to the relief sought. If relief is granted under this
> subsection or by order of a court under this Section, the Director shall as soon
> as practicable but in no case later than 15 business days, update, correct,
> modify, or remove the person's record in any database that the Department of
> State Police makes available to the National Instant Criminal Background
> Check System and notify the United States Attorney General that the basis for
> the record being made available no longer applies.

430 ILCS 65/10(f). Section 11 provides for *de novo* judicial review of the Director's decision:

"Any final administrative decision by the Director of State Police to deny a person's application

for relief under [§ 10(f)] of this Act is subject to de novo judicial review by the circuit court, and

any party may offer evidence that is otherwise proper and admissible without regard to whether

that evidence is part of the administrative record." 430 ILCS 65/11(b).

As of February 3, 2011, Plaintiffs possessed FOID cards, owned firearms, and kept their firearms in their home. Doc. 29 at ¶¶ 9-11. At some point before February 3, 2011, David expressed "unpopular political views … about his support of Second Amendment rights" to "a locally elected official." *Id*. at ¶¶ 34, 36. That official, somebody in that official's office, or one of the individual defendants falsely construed David's comments "as evidence that [he] had a mental condition that made him dangerous." *Id*. at ¶ 36. On February 3, 2011, Lieutenant Coffman wrote a letter to David revoking his FOID card under § 8(f) of the Act based on the false and unreasonable assertion that David had a "mental condition" within the meaning of that provision. *Id*. at ¶¶ 12, 14, 31. The letter was mailed on February 4, 2011, *id*. at ¶ 13, and David did not receive it until February 7, 2011, *id*. at ¶ 15.

On February 5, 2011, with Lieutenant Coffman's approval, Agents Pryor and Summers entered Plaintiffs' home without a warrant or consent, conducted a search, and seized Plaintiffs' firearms, which Plaintiffs used for personal protection, hunting, investment, and enjoyment. *Id*. at ¶¶ 16-17. These actions were taken even though "[t]here was no reasonable basis to conclude David Rhein had a mental condition that presented a clear and present danger to himself or anyone else." *Id*. at ¶ 23. It follows, the amended complaint claims, that the seizure of Plaintiff's firearms and the revocation of David's FOID card was "in no way … justified under this statute [§ 8(f)]." *Id*. at ¶ 22. Kim's FOID card was not revoked. *Id*. at ¶¶ 11, 30.

Plaintiffs hired an attorney, and in Summer 2012, as a result of a court order, their firearms were returned to them. *Id*. at ¶ 18. Plaintiffs plan to continue engaging in political commentary in support of the Second Amendment, and they fear that their speech will put them at risk of being labeled "mentally unstable and dangerous" and having their firearms seized and FOID cards revoked. *Id*. at ¶¶ 37-38.

**Discussion**

**I.     Facial Challenge to § 8(f) of the FOID Card Act**

Defendants contend that Plaintiffs lack standing to facially challenge the constitutionality of § 8(f) of the Act. Doc. 27 at 12-14. This argument implicates the court's subject matter jurisdiction, and thus must be addressed at the threshold. *See Citizens Against Ruining the Env't v. EPA*, 535 F.3d 670, 675 (7th Cir. 2008). Although Defendants press their standing argument under Rule 12(b)(6), the appropriate vehicle is Rule 12(b)(1). *See Am. Fed'n of Gov't Emps., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999) ("Obviously, if a plaintiff cannot establish standing to sue, relief from this court is not possible, and dismissal under [Rule] 12(b)(1) is the appropriate disposition."). Under governing Seventh Circuit precedent, Plaintiffs lack standing to pursue their facial challenge.

"When the plaintiff applies for prospective relief against a harm not yet suffered—or one he believes he will suffer again—he must establish that he 'is immediately in danger of sustaining some direct injury as the result of the challenged official conduct[,] and [that] the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical.'" *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) (alterations in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "As a general matter, a plaintiff who wishes to engage in conduct arguably protected by the Constitution, but proscribed by a statute, successfully demonstrates an immediate risk of injury," as "[t]he existence of the statute constitutes the government's commitment to prosecute in accordance with it and, thus, a concrete prospect of future harm for one who would flout it." *Ibid.* "Accordingly, when a plaintiff expresses a credible intention to disobey a statute, a sufficient likelihood of injury exists, and a pre-enforcement challenge is appropriate." *Ibid.* By contrast, "where the plaintiff seeks relief from

the defendant's criminal or unconstitutional behavior," or when "a statute was or would have to be misapplied to justify the plaintiff's arrest," "the putative injury typically proves too remote or attenuated to sustain [federal] jurisdiction under Article III." *Ibid*.

The latter situation is exemplified by *Schirmer v. Nagode*, 621 F.3d 581 (7th Cir. 2010). While engaged in a nonviolent protest, the *Schirmer* plaintiffs were arrested and charged with violating a Chicago ordinance providing that a person commits disorderly conduct when he disobeys a police officer's lawful order to disperse where three or more persons are committing acts of disorderly conduct in the immediate vicinity. *Id*. at 582-83. The plaintiffs brought suit, alleging that, at the time of the arrest, neither the plaintiffs nor anybody else in the immediate vicinity were engaged in disorderly conduct, meaning that the arresting officers had "misapplied" the ordinance in arresting them. *Id*. at 583. The plaintiffs sought damages for the violation of their constitutional rights and also brought a facial challenge to the ordinance's constitutionality. *Id*. at 584. To support their standing to bring the facial challenge, the plaintiffs alleged that "they 'plan to continue their participation in constitutionally protected political activities and protests and … fear repeated disruption of these activities and protests and prosecution for them.'" *Ibid*.

The district court held that the plaintiffs had standing, declared the ordinance facially unconstitutional, and enjoined its enforcement. *Ibid*. The Seventh Circuit reversed, holding that although the plaintiffs had standing to pursue a damages claim, they lacked standing to pursue the facial challenge. *Id*. at 588. The Seventh Circuit explained that it was unlikely that "a favorable judicial decision w[ould] prevent or redress [the plaintiffs'] injury" "because the failure-to-disperse provision clearly did not apply to the plaintiffs' actions," as there were "[n]o allegations or facts in the record [to] indicate that three or more individuals were committing acts

of disorderly conduct in the plaintiffs' immediate vicinity." *Id.* at 585. The court added that the plaintiffs' "arrests appear to have been baseless, and for that reason, the district court's injunction against enforcement of the provision [was] unlikely to prevent any injury to [them]." *Ibid.* The court allowed that if there "had [been] any indication that the police were even arguably acting within the scope of the failure-to-disperse provision when they arrested plaintiffs, then these plaintiffs could have standing to challenge the facial constitutionality of that provision and to request injunctive relief." *Id.* at 587; *see also Bell*, 697 F.3d at 452 (holding that the plaintiffs in that case had standing to facially challenge the same ordinance because they were arrested for failing to disperse where there *were* three or more persons engaged in disorderly conduct in the immediate vicinity). However, citing the principle that "a plaintiff lacks standing to bring a pre-enforcement challenge if the plaintiff's 'conduct was clearly outside the statute's scope,'" the Seventh Circuit held that the plaintiffs "lacked standing to bring a facial challenge to a law that did not apply by its terms to their desired conduct." *Schirmer*, 621 F.3d at 587.

This case is on all fours with *Schirmer*. Plaintiffs do not allege that David's "mental condition is of such a nature that it poses a clear and present danger to [him], any other person or persons or the community," 430 ILCS 65/8(f), that he wants to keep his FOID card and his firearms despite that condition, and that § 8(f) is preventing him from so doing. If Plaintiffs had alleged that, there would be standing to pursue the facial challenge. *See Bell*, 697 F.3d at 452. To the contrary, the amended complaint alleges that "[t]here [was] no reasonable basis to conclude David Rhein had a mental condition that presented a clear and present danger to himself or anyone else," and that the seizure of Plaintiffs' firearms and the revocation of David's FOID card was "in no way justified under [§ 8(f)]." Doc. 29 at ¶¶ 22-23. That is, Plaintiffs'

position is that § 8(f) does not apply by its terms to them and that their condition and conduct fall

clearly outside the statute's scope. "Such a clear misuse of [§ 8(f)] does not provide a basis for a

federal court to explore that law's facial constitutionality." *Schirmer*, 621 F.3d at 588.

For these reasons, Plaintiffs lack standing to pursue their facial challenge to § 8(f). The

challenge accordingly is dismissed, though the dismissal is without prejudice. *See Harris v.*

*Quinn*, 656 F.3d 692, 701 (7th Cir. 2011) ("Generally, when a complaint is dismissed because …

the plaintiffs lack standing … it is dismissed without prejudice …."); *Am. Bottom Conservancy*

*v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 660 (7th Cir. 2011) (where a district court dismisses

a suit for lack of standing, "it [has] no jurisdiction [and] therefore [can] only dismiss without

prejudice"); *Ramsay v. Mayer*, 420 F. App'x 586, 588 (7th Cir. 2011) ("If plaintiffs indeed lack

standing, and there is no jurisdiction, then dismissal must be *without* prejudice; a court cannot

adjudicate a claim over which it lacks jurisdiction.").[*]

## II.     Individual Capacity Damages Claims

### A.      First Amendment Claim

Plaintiffs allege that Defendants violated their First Amendment rights when they

revoked David's FOID card and seized their firearms because David had "express[ed] unpopular

---

[*] *Schirmer* noted that if there had been "a record [in that case] showing a persistent pattern of similar police misconduct, persons intending to engage in protected speech and expression might be able to show that they were entitled to injunctive relief of some kind, if not against all enforcement of the provision then at least against future such misconduct." 621 F.3d at 588. The amended complaint here alleges "upon information and belief" that § 8(f) "is being used by Illinois State Police officials in a similar and persistent manner against other individuals in Illinois who are having their firearms and/or FOID cards revoked pursuant to this statute for engaging in speech that Illinois State Police officials are falsely construing as an indicative of a mental condition exhibiting dangerousness." Doc. 29 at ¶ 39. However, nowhere in their amended complaint or their opposition brief do Plaintiffs state or even suggest that they are seeking an injunction against the misuse of § 8(f) in that manner; rather, they seek an injunction against any and all enforcement of the statute. *Id*. at p. 6 (seeking "declaratory and injunctive relief against Defendant Grau in that Plaintiffs seek a declaration that 430 ILCS 65/8(f) is unconstitutional, and that Defendants should be temporarily, then permanently, enjoined from enforcing this statute").

political views, specifically about his support of Second Amendment rights." Doc. 29 at ¶ 34.

To state a viable First Amendment retaliation claim, a plaintiff must allege that: "(1) he engaged

in activity protected by the First Amendment; (2) he suffered a deprivation that would likely

deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a

motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*,

557 F.3d 541, 546 (7th Cir. 2009). The amended complaint plainly alleges all three elements—

David's speech about the Second Amendment was protected by the First Amendment, having his

FOID card and firearms taken away could deter him from engaging in that speech, and his FOID

card and firearms were taken away because Defendants did not like his speech.

Defendants nonetheless argue that "Plaintiffs have pleaded themselves out of court on

their First Amendment retaliation claim," Doc. 27 at 16, because they "admit that Mr. Rhein had

made perceived threats to a locally elected government official," *id*. at 2, and "admit that

Defendants revoked Mr. Rhein's FOID card because they believed that Mr. Rhein possessed a

mental condition presenting a clear and present danger," *id*. at 17. But Plaintiffs have admitted

no such thing. To the contrary, they allege that "[t]he actions taken against David Rhein … were

done because of his political comments to a locally elected official some time before the illegal

search and seizure that concerned David Rhein's views about Americans' Second Amendment

rights that either the representative, someone in that representative's office, and/or one of the

Defendant Officers somehow construed (falsely) as evidence that David Rhein had a mental

condition that made him dangerous," Doc. 29 at ¶ 36; that David "was unreasonably deemed

mentally unfit based on the exercising of his free speech issues regarding the Second

Amendment," Doc. 30 at 16; and that "[w]hile Coffman alleged in his letter that David Rhein

had … a mental condition, this is totally without merit, [and] Coffman had no reasonable basis

for making this conclusion," Doc. 29 at ¶ 31. These allegations are sufficient at this stage of the proceedings to support a claim that Defendants revoked David's FOID card and took away his firearms in retaliation for his protected speech.

### B.      Second Amendment Claim

Plaintiffs also allege that the revocation of David's FOID card and confiscation of their firearms violated the Second Amendment, which provides an individual right to firearms ownership. *See McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008). If David indeed had a mental condition of a nature that posed a clear danger to himself or others, then he likely would have suffered no Second Amendment deprivation. *See Heller*, 554 U.S. at 626 (observing that "the right secured by the Second Amendment is not unlimited," and noting that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons or the mentally ill"); *Moore v. Madigan*, 702 F.3d 933, 940-41 (7th Cir. 2012) (same); *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001) ("it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms"). But Plaintiffs allege that David had no such mental condition and could not reasonably have been thought to have such a condition. Doc. 29 at ¶ 23 ("There [was] no reasonable basis to conclude David Rhein had a mental condition that presented a clear and present danger to himself or anyone else."); *id*. at ¶ 31 (asserting that "Coffman had no reasonable basis for making [the] conclusion" that David had a dangerous mental condition); Doc. 30 at 13 (alleging that David was "falsely labeled as dangerous and mentally incompetent"). Because those allegations are deemed true at the pleading stage, the individual capacity Second Amendment claim survives dismissal.

### C.     Fourth Amendment Claim

Plaintiffs allege that their Fourth Amendment rights were violated when "Defendants Pryor and Summers, without a warrant, the Plaintiffs' valid and voluntary consent, or any other legal justification, entered … and illegally searched the Plaintiffs' home, and, once inside, … illegally seized the Plaintiffs' firearms …."  Doc. 29 at ¶ 16.  The entry and search of a home without consent or a warrant presumptively violates the Fourth Amendment.  *See Kentucky v. King*, 131 S. Ct. 1849, 1356 (2011) ("It is a basic principle of Fourth Amendment law … that searches and seizures inside a home without a warrant are presumptively unreasonable.") (internal quotation marks omitted); *Groh v. Ramirez*, 540 U.S. 551, 564 (2004) (characterizing as a "basic rule, well established by [Supreme Court] cases," that "absent consent or exigency, a warrantless search of the home is presumptively unconstitutional").  An exception applies if exigent circumstances are present.  *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("Warrants are generally required to search a person's home … unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (internal quotation marks omitted).  Exigent circumstances may be present if there is a "need to protect or preserve life or avoid serious injury."  *Ibid.*; *see also United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007) (holding that exigent circumstances may be present where the police need to "step in to prevent serious injury and restore order").

Defendants contend that there were exigent circumstances here—namely, the "immediate risk of harm" posed by David's "mental state that presented a clear and present danger to himself and others" and his possession of firearms.  Doc. 27 at 14-16; Doc. 34 at 12-13.  But again, Plaintiffs allege that the supposed concern about David's mental condition was a ruse and a

pretext to take his FOID card and guns in retaliation for his pro-Second Amendment speech. And even putting aside the allegation, taken as true at this stage, that the individual defendants did not subjectively believe that David's mental condition posed an immediate danger, Defendants must prove that they "had an *objectively* reasonable belief that exigent circumstances existed at the time of their warrantless entry into [Plaintiffs'] residence." *United States v. Fiasche*, 520 F.3d 694, 698 (7th Cir. 2008) (emphasis added); *see also Fitzgerald v. Santoro*, 707 F.3d 725, 731 (7th Cir. 2013) (holding that the defendant officers in a civil suit alleging a Fourth Amendment violation "were required to have an objectively reasonable basis for their belief that exigent circumstances existed" in order to justify their warrantless entry into the plaintiff's home). The amended complaint alleges, plausibly, that any such belief would have been unreasonable, Doc. 29 at ¶ 23, which is sufficient to defeat Defendants' exigent circumstances argument at the pleading stage.

### D. Due Process Claim

Plaintiffs allege that the revocation of his FOID card and seizure of his firearms violated his right to due process. Doc. 29 at ¶ 20. Defendants' brief does not mention the individual capacity due process claim, let alone seek its dismissal.

### E. Coffman's Supervisory Liability

Defendants argue that because Plaintiffs failed to adequately plead an underlying Fourth Amendment violation by Agents Pryor and Summers, the supervisory liability claim against Lieutenant Coffman must be dismissed. Doc. 27 at 17-18. Because Plaintiffs have stated a Fourth Amendment claim, Defendants' argument is without merit. No other basis is submitted for dismissing Coffman as a party defendant.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  Plaintiffs' facial challenge to the constitutionality of § 8(f) is dismissed without prejudice for lack of standing.  The individual capacity damages claims may proceed.  The individual defendants shall answer the surviving portions of the amended complaint by April 10, 2014.

March 20, 2014

_____

United States District Judge

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6,1
### Eastern Division

David Rhein, et al.

                 Plaintiff,

v.
                               Case No.: 1:13−cv−00843
                               Honorable Gary Feinerman

John Coffman, et al.

                 Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, August 6, 2015:

      MINUTE entry before the Honorable Gary Feinerman:For the reasons set forth in the accompanying Memorandum Opinion and Order, Defendant John Coffman's summary judgment motion [65] is granted and Plaintiff David Rhein's summary judgment motion [69] is denied. Enter judgment order. Status hearing set for 8/17/2015 [58] is stricken. Civil case closed.Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID RHEIN, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 843 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| JOHN COFFMAN, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

David and Kim Rhein brought this suit under 42 U.S.C. § 1983 against Agent Steven

Pryor, Agent Freddie Summers, and Lieutenant John Coffman of the Illinois State Police ("ISP")

in their individual capacities, and ISP Director Hiram Grau in his official capacity. Doc. 29.

The official capacity claim alleged that § 8(f) of the Illinois Firearm Owners Identification

("FOID") Card Act, 430 ILCS 65/8(f), is facially unconstitutional, while the individual capacity

claims alleged that the revocation of David's FOID card and seizure of his and Kim's firearms

from their home violated the First, Second, Fourth, and Fourteenth Amendments. The court

dismissed for lack of Article III standing the constitutional challenge to § 8(f). Docs. 42-43

(reported at 2014 WL 1099157 (N.D. Ill. Mar. 20, 2014)). Then, by agreement, the remaining

claims were dismissed except for David's Fourteenth Amendment due process claim against

Coffman, which alleges that Coffman failed to provide constitutionally adequate process before

and after revoking David's FOID card. Doc. 64. Coffman and David (who henceforth will be

referred to as "Rhein") have filed cross-motions for summary judgment. Docs. 65, 69. For the

following reasons, Coffman's motion is granted and Rhein's motion is denied.

**Background**

When considering Coffman's summary judgment motion, the facts are considered in the light most favorable to Rhein, and when considering Rhein's summary judgment motion, the facts are considered in the light most favorable to Coffman. *See In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) ("With cross summary judgment motions, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.") (internal quotation marks omitted). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012). That said, many of the following facts are undisputed.

Until his FOID card was revoked, Rhein owned firearms and maintained them at his home in his Sauk Village, Illinois, a suburb south of Chicago. Doc. 77 at ¶ 3; Doc. 75 at ¶ 2. On March 10, 2010, Rhein visited the office of State Representative Anthony DeLuca in Springfield to drop off a packet of documents that included a petition requesting answers about why the Constitution was being violated. Doc. 77 at ¶ 9; Doc. 75 at ¶ 6. On March 22, Rhein called DeLuca's district office in Crete, a suburb close to Sauk Village, to ask whether DeLuca had received those documents and to inquire about delivering another set to the Crete office. Doc. 77 at ¶ 10; Doc. 75 at ¶ 6. Rhein spoke with Donna Fanning, DeLuca's District Manager, who reported that Rhein told her that he was "ready to start shooting people." Doc. 77 at ¶¶ 10-11; Doc. 75 at ¶ 6. Rhein left a set of documents at the Crete office later that day. Doc. 77 at ¶ 10. On August 3, Rhein dropped off another set of documents at the Crete office; one document stated that DeLuca should "hang for treason for allowing this state and federal government to piss and shit all over we the people's individual rights." *Id*. at ¶ 13; Doc. 75 at ¶ 8. This prompted Fanning to call the Crete police and turn over the documents to them. Doc. 77 at

¶¶ 13-14.  On September 30, Rhein called DeLuca's office and yelled at Fanning.  *Id*. at ¶ 15;

Doc. 75 at ¶ 9.

On or about January 14, 2011, Rhein called Fanning and said that he was going to visit

the Crete office.  Doc. 75 at ¶ 10; Doc. 77 at ¶ 16.  Fanning alerted the Crete police.  Doc. 77 at

¶ 17.  Rhein delivered another packet of documents and left.  *Id*. at ¶ 18.  The outside of the

packet read, "WHATS IN THIS ENEVELOPE ARE FACTS NOT FICTION," "LEARN TO

READ THE TRUTH THE WHOLE TRUTH AND NOTHING BUT THE TRUTH SO HELP

YOU (GOD)," "IT ALSO EXPLAINS WHY THERE ARE SO MANY FATASS & LAZYASS

PEOPLE IN THIS COUNTRY AND STATE," "1812-2012," "WHAT MITE THESE TWO

DATES HAVE IN COMMON?" "NEED A HINT."  Doc. 75 at ¶ 10 (original spelling

preserved).  The packet contained, among other things, copies of the Declaration of

Independence, the Constitution, and a biography of the Attorney General of Illinois.  *Id*. at ¶ 11.

On various pages, Rhein wrote, among other things, "Now you know why so many of your

people or going to be shot because your too selfish too understand the truth," "Constitutional

Convention—Artical XII State Second Amendment Fed Now you know why you may be next,"

"You all need to take a step back and take a look at what you are doing to this state.  Befor[e] we

the people go Second Amendment on your assess."  *Id*. at ¶¶ 11-12 (most original spelling

preserved).  Rhein drew a crosshairs symbol on one page.  *Id*. at ¶ 11.

Rhein does not remember contacting DeLuca's office after January 14, 2011.  *Id*. at ¶ 14.

However, Fanning avers in a sworn statement that Rhein called and visited DeLuca's office

again on January 25.  Doc. 67-6 at ¶¶ 9-13.  Fanning further avers that Rhein told her he was a

member of the Illinois State Militia and that she feared that he posed a threat, which prompted

her to ask her husband to join her at the office.  *Id*. at ¶¶ 9-10; Doc. 77 at ¶ 20; Doc. 75 at ¶ 13.

Fanning described Rhein's body language during his hour long "rant" as "very animated," and recalled him yelling "for extended periods of time" and referring to 2012 as "a year of revolution and overthrowing the government." Doc. 67-6 at ¶¶ 11-12. Although Rhein disputes that he did this on January 25, the parties agree that he referred to himself as a "sacrifice lamb" and also that he told Fanning, "I have never shot anybody in my life, and I never would shoot anyone, unless I am forced to—to protect my constitutional rights." Doc. 75 at ¶¶ 15-16. Fanning informed the Crete police and the ISP Statewide Terrorism Intelligence Center about her interactions with Rhein. *Id*. at ¶ 17.

ISP special agents told Lieutenant Coffman, who at the time was Chief of the ISP's Bureau of Firearm Services, that Rhein had made threats to DeLuca's office. *Id*. at ¶¶ 1, 4. The agents sent Coffman a written summary prepared by Fanning of Rhein's statements and actions, together with documents that she had received from Rhein. *Id*. at ¶¶ 5, 18. Fanning's summary indicated that Rhein told her that he was "ready to start shooting people" and would "kick the Governor's ass," and that he referred to himself as a "sacrifice lamb." *Id*. at ¶ 5.

On February 3, 2011, based on the information provided to him, Coffman revoked Rhein's FOID card pursuant to § 8(f) of the FOID Card Act, and wrote a letter to Rhein to that effect. *Id*. at ¶¶ 19-20; Doc. 77 at ¶ 37. Section 8(f) allows the ISP to revoke the FOID card of an individual "whose mental condition is of such a nature that it poses a clear and present danger to [the individual], any other person or persons or the community." 430 ILCS 65/8(f). Section 1.1 of the Act defines "[c]lear and present danger" as "a person who: (1) communicates a serious threat of physical violence against a reasonably identifiable victim …; or (2) demonstrates threatening physical or verbal behavior, such as violent … or assaultive threats, actions, or other behavior, as determined by a … law enforcement official." 430 ILCS 65/1.1. ISP policy is to

not interview a cardholder prior to revocation under § 8(f). Doc. 75 at ¶ 21. ISP agents handle pre-revocation investigations, and decisionmakers rely on the investigations when deciding whether revocation is appropriate. *Ibid*. Due to the nature of the risks to public safety involved, Coffman did not conduct an independent investigation before revoking Rhein's FOID card. *Id*. at ¶¶ 21-22.

On or about February 4, 2011, a local police officer visited Rhein's home and told him that ISP agents were waiting for him at the police station. Doc. 77 at ¶ 41. Rhein accompanied the officer to the station, where he was interviewed by Agents Pryor and Summers and informed that his FOID card had been revoked and that he would need to surrender his firearms. *Id*. at ¶¶ 42-43. Rhein "spoke passionately" but remained calm during the interview. *Id*. at ¶ 54. He expressed readiness to challenge DeLuca in the next election and said that his comments had been meant to get people's attention. *Id*. at ¶¶ 45-46. Local police and Agent Pryor then removed Rhein's firearms from his home. *Id*. at ¶ 59. Rhein immediately asked about retrieving his firearms and was told to consult the FOID card revocation letter. *Id*. at ¶¶ 61-62.

The standard revocation letter, which Rhein received, instructs an individual who desires reinstatement to contact the ISP's Bureau of Firearm Services. *Id*. at ¶ 74. It further states that the recipient should obtain a letter of recommendation from the local police department or sheriff's office, a letter from a psychologist attesting to his suitability to acquire, possess, and use firearms, and at least three letters of recommendation from character references. *Id*. at ¶ 75. If those documents show that the clear and present danger no longer exists, the individual's FOID card may be reinstated without an in-person hearing. Doc. 75 at ¶ 26. If a an in-person hearing is requested, the Bureau forwards to ISP's legal department the individual's documents along with relevant information from any objecting parties, local law enforcement officers, and ISP

agents. *Id*. at ¶ 27. The decision whether an individual is entitled to an in-person hearing rests with ISP's legal department. *Id*. at ¶ 28. It can take over a year after a request to receive a hearing. *Id*. at ¶ 25.

On August 1, 2011, Rhein's attorney sent a letter to Coffman requesting reinstatement of Rhein's FOID card; the Bureau received the letter on August 8, 2011. Doc. 77 at ¶ 81; Doc. 68-3 at 79. The letter included a psychological report written by Dr. Alan Childs and three character reference letters. Doc. 77 at ¶ 82. Dr. Childs's report concluded, "[I]t is my professional and clinical opinion that [Rhein] does not present as an individual that is dangerous to himself or others." *Id*. at ¶ 83. The materials were placed in Rhein's file. Doc. 75 at ¶ 37. On September 19, 2011, Rhein's attorney sent Coffman a follow-up letter. Doc. 77 at ¶ 84.

Rhein's attorney sent another letter on January 19, 2012. Doc. 75 at ¶ 41. That letter was the first communication in which Rhein (through his attorney) formally requested a hearing. *Id*. at ¶ 40. After receiving the letter, Coffman told ISP staff to contact Rhein's attorney and forwarded the hearing request to ISP's legal department. *Id*. at ¶ 41. On January 24, 2012, ISP Colonel Patrick Keen sent the Bureau of Firearm Services a memorandum regarding Rhein's hearing request. Doc. 77 at ¶ 94. In February 2012, Coffman was transferred out of the Bureau of Firearm Services to ISP's Division of Operations, at which point he had no further involvement with Rhein's request for a hearing or reinstatement. Doc. 75 at ¶¶ 42-43.

On March 11, 2012, an internal ISP email noted that Rhein's attorney had requested a hearing "last year" but had not received a response. Doc. 77 at ¶ 95. On April 12, 2012, Rhein filed suit in state court seeking reinstatement of his FOID card and return of his weapons. *Id*. at ¶ 98. On June 5, 2012, ISP reinstated Rhein's FOID card, and his firearms were returned to him on August 29, 2012. *Id*. at ¶¶ 99-101; Doc. 75 at ¶ 44. Rhein filed this suit on February 1, 2013.

### Discussion

Rhein argues that Coffman violated procedural due process by not conducting a hearing before revoking his FOID card and in his handling of Rhein's post-revocation requests for reinstatement. Coffman seeks judgment on both components of Rhein's claim, contending that Rhein was not constitutionally entitled to a pre-deprivation hearing and that he did not unconstitutionally delay Rhein's post-deprivation hearing, and that even if he did violate Rhein's due process rights, those rights were not clearly established when the violations occurred. For the following reasons, Coffman is correct that due process did not entitle Rhein to a pre-deprivation hearing. Coffman also is correct that even if his post-revocation conduct violated Rhein's due process rights, he is entitled to qualified immunity because he did not violate clearly established law.

### I.    Pre-Deprivation Claim

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). "When confronted with a claim for qualified immunity, [the court] must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct." *Ibid*. "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *Ibid*.

The first question in the qualified immunity analysis asks whether, viewing the record in the light most favorable to Rhein, Coffman violated Rhein's procedural due process rights by

revoking his FOID card under § 8(f) of the FOID Card Act without first holding a hearing. "A procedural due process claim requires a two-fold analysis. First, [the court] must determine whether the plaintiff was deprived of a protected interest; second, [the court] must determine what process is due." *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 804 (7th Cir. 2010). Coffman does not dispute that Rhein had a protectable interest in his FOID card, so the court must resolve whether Rhein was entitled to a pre-deprivation hearing.

"[The] general rule [is] that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). However, the Supreme Court "has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (collecting cases); *see also James Daniel Good*, 510 U.S. at 53; *Siebert v. Severino*, 256 F.3d 648, 659 (7th Cir. 2001) ("Absent exigent circumstances, or a random or unforeseen act, a pre-deprivation procedure is generally required before the government may deprive a person of [his] property."). The question, then, is whether the revocation of Rhein's FOID card under § 8(f) justified such an exception.

The three-part standard articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976) guides the inquiry. *See Siebert*, 256 F.3d at 659-60. The *Mathews* test requires consideration of: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value of additional safeguards; and (3) the Government's interest, including the administrative burden that additional procedural requirements would entail. *See Mathews*, 424 U.S. at 335; *Armstrong v. Daily*, 786 F.3d 529, 545 (7th Cir. 2015). "The relevant inquiry is not what additional procedures might be helpful but

8

whether the existing procedures are constitutionally defective because they present an unreasonable risk of an erroneous deprivation of the private interest, in light of the particular situation …." *Clancy v. Office of Foreign Assets Control*, 559 F.3d 595, 600 (7th Cir. 2009).

As for the first *Mathews* factor, the parties agree that Rhein had a protectable interest in in his FOID card, but they disagree about its weight. No person in Illinois "may acquire or possess any firearm" without a valid FOID card, 430 ILCS 65/2(a)(1), so Rhein's FOID card was the key to possessing his guns. As a general rule, an individual's interest in possessing his guns is strong, as explained at length in *McDonald v. City of Chicago*, 561 U.S. 742, 767-80 (2010), and *Moore v. Madigan*, 702 F.3d 933, 935-42 (7th Cir. 2012). However, the Supreme Court has cautioned that this interest, while strong, is "not unlimited," and made clear that it did not intend to "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The record does not indicate that Rhein is felon, and he may not have technically qualified as mentally ill when his FOID card was revoked in February 2011. But the Supreme Court emphasized that its list of "lawful regulatory measures … does not purport to be exhaustive," *id*. at 627 n.26, and the threats that Coffman was told that Rhein had made—including "Now you know why so many of your people or going to be shot because your too selfish too understand the truth," and "You all need to take a step back and take a look at what you are doing to this state. Befor[e] we the people go Second Amendment on your assess"—could have prompted the reasonable conclusion that Rhein was mentally imbalanced and that allowing him to keep his weapons posed too much of a risk to tolerate. *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (noting that a report identified by *Heller* as a "highly influential precursor to the Second Amendment" "asserted that citizens have a personal right to bear arms 'unless for crimes

committed, or real danger to public safety'") (internal quotation marks omitted); C. Kevin Marshall, "Why Can't Martha Stewart Have A Gun," 32 *Harv. J.L. & Pub. Pol'y* 695, 698 (2009) ("actual 'longstanding' precedent in America and pre-Founding England suggests that a firearms disability can be consistent with the Second Amendment to the extent that … its basis credibly indicates a present danger that one will misuse arms against others and the disability redresses that danger").

The second *Mathews* factor is the risk of an erroneous deprivation of the private interest inherent in the procedures used and the probable value of additional safeguards. Coffman decided to revoke Rhein's FOID card based on information gathered and an investigation conducted by ISP agents, which indicated that Rhein had threatened DeLuca, including with strong and repeated suggestions of gun violence, over the course of several months. ISP agents relied on Fanning's statements to ISP and local police about her interactions with Rhein, as well as the documents that Rhein himself dropped off at DeLuca's offices. As far as Coffman knew, Rhein had said he was "ready to start shooting people," that he would "kick [the Governor's] ass," and that he was a "sacrifice lamb." Coffman also had information that Rhein stated that DeLuca should "hang for treason," and said "Now you know why so many of your people or [sic] going to be shot" and that he might "go Second Amendment on your assess"; given the subject matter of the Second Amendment, the phrase "go Second Amendment on your assess" is most naturally understood as a reference to shooting people with a gun. Nothing in the record indicates that there was any reason to doubt the information that ISP had gathered, and it was reasonable for Coffman to treat Rhein's statements and conduct as presenting a "clear and present danger" under § 8(f) in that he had communicated a "serious threat of physical violence against a reasonably identifiable victim." 430 ILCS 65/1.1. Not allowing a FOID card holder to

rebut evidence of a serious threat of gun violence before revoking his FOID card involves some risk of an erroneous deprivation based on misunderstanding or misinterpretation. However, the value of additional pre-deprivation procedures is low—particularly where, as here, many of Rhein's threatening statements were in his own hand—and the burden on law enforcement and the costs to society are potentially high and possibly fatal. *See Mackey v. Montrym*, 443 U.S. 1, 13 (1979) ("The Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations.").

The third *Mathews* factor is the government's interest, including the administrative burden that additional procedural requirements would entail. The government's interest in ensuring public safety is extremely important. *See Skoien*, 614 F.3d at 642 ("no one doubts that … preventing armed mayhem … is an important governmental objective"). It provides perhaps the quintessential example of when not providing a pre-deprivation hearing is constitutionally permissible. *See Gilbert*, 520 U.S. at 930 ("where a State must act quickly … post-deprivation process satisfies the requirements of the Due Process Clause"); *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981) ("[D]eprivation of property to protect the public health and safety is one of the oldest examples of permissible summary action.") (internal quotation marks omitted). The interest in preventing a threatening and perceivably dangerous person from using firearms in acts of violence is equally, if not more, important as other governmental interests held substantial enough to justify summary action without pre-deprivation hearings, such as assuring the integrity of horse racing, *see Barry v. Barchi*, 443 U.S. 55, 63-64 (1979); removing drunk drivers from highways, *see Mackey*, 443 U.S. at 17; seizing mislabeled drugs, *see Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 600 (1950); and destroying spoiled food products, *N. Am. Cold Storage Co. v. City of Chicago*, 211 U.S. 306, 319-20 (1908).

The government's interest in protecting public safety is particularly acute where time is of the essence and the delay involved in conducting a pre-deprivation hearing could mean the difference between life and death. *See Spinelli v. City of N.Y.*, 579 F.3d 160, 170 (2d Cir. 2009) (finding that "exigent circumstances necessitating very prompt action on the part of the City were sufficient to justify the City's failure to provide [the plaintiff gun shop] with pre-deprivation notice or hearing" before revoking the plaintiff's gun dealer license) (internal quotation marks omitted). This factor weighs heavily in favor of Coffman, whose decision to revoke Rhein's FOID card was based on an ISP investigation indicating that Rhein was prepared to use gun violence. That information warranted immediate action and exemplifies circumstances where the necessity of quick state action can override the general preference for a pre-deprivation hearing. *See Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 618 (7th Cir. 2002) ("[T]he practical exigencies of a situation may often counsel against affording plenary pre-deprivation process to an individual."); *Hightower v. City of Boston*, 693 F.3d 61, 85 (1st Cir. 2012) (collecting cases) ("The revocation of a firearms license, particularly a license to carry a concealed, large capacity weapon, without a predeprivation hearing is justified by concerns as to public health and safety."). We are all too familiar, in Illinois and elsewhere, with tragedies in which public officials—and, at times, their staffs and family members—are seriously injured or killed by armed individuals upset with decisions that the officials have made or actions they have taken, and Rhein appeared to be presenting just such a risk to DeLuca and his staff.

Balancing the benefits and costs of a pre-deprivation hearing under these circumstances leads inexorably to the conclusion that Rhein was not constitutionally entitled to such a hearing. It was permissible for Coffman to act quickly, without a pre-deprivation hearing, and it probably would have been irresponsible of him to act with any less dispatch. That a pre-deprivation

hearing was not required, however, does not mean that Rhein was entitled to no hearing at all; it means only that the lack of a pre-deprivation hearing did not violate due process so long as he had the right to a post-deprivation hearing. *See FDIC v. Mallen*, 486 U.S. 230, 240 (1988) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.").

Rhein did have that right, as the FOID Card Act clearly sets forth procedures available to those whose FOID cards are revoked. Section 9 requires the ISP to provide such a person with "a written notice … stating specifically the grounds upon which … his Identification Card has been revoked … [and setting forth] the person's right to administrative or judicial review under Section 10 and 11 of this Act." 430 ILCS 65/9. Coffman complied with this requirement in his letter to Rhein of February 3, 2011. Doc. 75 at ¶ 20, Doc. 67-9. Section 10 states that a person whose FOID card is revoked "may appeal to the Director of State Police for a hearing upon such … revocation." 430 ILCS 65/10(a). Section 10 further provides:

> The Director shall grant the relief if it is established by a preponderance of the evidence that the person will not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest. In making this determination, the Director shall receive evidence concerning (i) the circumstances regarding the firearms disabilities from which relief is sought; (ii) the petitioner's mental health and criminal history records, if any; (iii) the petitioner's reputation, developed at a minimum through character witness statements, testimony, or other character evidence; and (iv) changes in the petitioner's condition or circumstances since the disqualifying events relevant to the relief sought. If relief is granted under this subsection or by order of a court under this Section, the Director shall as soon as practicable but in no case later than 15 business days, update, correct, modify, or remove the person's record in any database that the Department of State Police makes available to the National Instant Criminal Background Check System and notify the United States Attorney General that the basis for the record being made available no longer applies.

430 ILCS 65/10(f). Section 11 provides for *de novo* judicial review of the Director's decision: "Any final administrative decision by the Director of State Police to deny a person's application for relief under [§ 10(f)] of this Act is subject to de novo judicial review by the circuit court, and any party may offer evidence that is otherwise proper and admissible without regard to whether that evidence is part of the administrative record." 430 ILCS 65/11(b). These procedures offer substantial opportunity to challenge the revocation of a FOID card, first in an administrative setting and then through judicial review.

Weighing the *Mathews* factors and considering the post-deprivation procedures available through the FOID Card Act, the court concludes that Coffman did not violate Rhein's procedural due process rights by revoking his FOID card without first conducting a hearing. *See Doyle*, 305 F.3d at 618. Accordingly, Coffman is entitled to summary judgment on Rhein's claim that the lack of a pre-deprivation hearing violated due process.

## II.    Post-Deprivation Claim

Rhein next claims that Coffman violated his procedural due process rights by failing to provide "a prompt and meaningful post-deprivation hearing." Doc. 70 at 9. Rather than decide whether the delay in providing post-deprivation hearing violated due process, the court will exercise its discretion to answer the second qualified immunity question, which is whether the delay violated clearly established law. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Mordi v. Zeigler*, 770 F.3d 1161, 1165 (7th Cir. 2014). That issue turns on whether a reasonable officer in Coffman's position would have known that his role in delaying Rhein's post-deprivation hearing violated due process. *See Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012).

As noted above, even when due process does not demand a pre-deprivation hearing, it requires a post-deprivation opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *see also Barry*, 443 U.S. at 66. "While there is no specific time frame within which a hearing must be held to qualify as 'prompt,' lack of a speedy resolution to proceedings may result in a denial of due process." *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 692 (7th Cir. 2004). The delay here was between August 8, 2011, when the Bureau of Firearm Services stamped "received" on a letter from Rhein's attorney requesting reinstatement of his FOID card, Doc. 68-3 at 79, and early February 2012, when Coffman was transferred to ISP's Division of Operations and no longer involved with Rhein's request for a hearing, Doc. 75 at ¶¶ 42-43. Although Rhein's FOID card was not reinstated until June 5, 2012, Coffman's responsibility ceased with his personal involvement in the matter. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("A damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation."); *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

To overcome qualified immunity, Rhein must show that it was clearly established that the six-month delay between his initial request for reinstatement and Coffman's leaving the Bureau—or, if Coffman were held responsible through June 2012, the ten-month delay between Rhein's initial request and his FOID card's reinstatement—was an unconstitutionally lengthy delay. *See Nanda v. Moss*, 412 F.3d 836, 844 (7th Cir. 2005). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or

constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal citations, quotations marks, and alterations omitted).

The trouble with Rhein's position is that the question of how long is "too long" for an individual FOID cardholder to go without a hearing after revocation was not clearly established in 2011 and 2012, and the precise answer remains unclear even today. The Supreme Court has held that, "though there is a point at which an unjustified delay in completing a post-deprivation proceeding would become a constitutional violation, the significance of such a delay cannot be evaluated in a vacuum." *Mallen*, 486 U.S. at 242 (internal quotation marks and citation omitted). Whether the delay in providing a post-deprivation hearing violates due process depends upon an assessment of *Mathews*-like factors: "[I]t is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying government interest; and the likelihood that the interim decision may have been mistaken." *Ibid*.; *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *Dupuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005).

That multi-factor standard, which necessarily involves the balancing of various considerations, does not clearly establish that the six-month (or ten-month) delay at issue here fell below the constitutional line. As the Seventh Circuit has explained: "It would appear that, whenever a balancing of interests is required, the facts of the existing caselaw must closely correspond to the contested action before the defendant official is subject to liability under the *Harlow* [qualified immunity standard]. With *Harlow*'s elimination of the inquiry into the actual motivations of the official, qualified immunity typically casts a wide net to protect government officials from damage liability whenever balancing is required." *Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir. 1986), *superseded by statute on other grounds as stated in Laborers' Pension*

*Fund v. A&C Envtl., Inc.*, 301 F.3d 768, 778 (7th Cir. 2002); *see also Crue v. Aiken*, 370 F.3d

668, 688 (7th Cir. 2004) ("Here, both *Pickering/Connick* and *NTEU* involve balancing tests and,

unless there is 'very closely analogous' case law, the balance struck by the official will not

remove qualified immunity."); *Gustafson v. Jones*, 117 F.3d 1015, 1021 (7th Cir. 1997) (noting

"an undeniable fact about balancing tests, which is that they produce a wide gray area between

the clearly legal and the clearly illegal," meaning that "the rules of qualified immunity require

giving the benefit of the doubt to the reasonable public official if the particular case falls within

that gray area"); *Shinault v. Hawks*, 782 F.3d 1053, 1059 (9th Cir. 2015) ("Because the *Mathews*

test boils down to an ad hoc balancing inquiry, procedural due process requirements can rarely

be considered clearly established at least in the absence of closely corresponding factual and

legal precedent.") (internal quotation marks omitted); *Comprehensive Addiction Treatment Ctr.,*

*Inc. v. Leslea*, 552 F. App'x 812, 817 (10th Cir. 2014) ("the *Mathews* balancing test renders it

difficult … for state officials to know that they have violated clearly established law") (internal

quotation marks omitted, ellipses in original).  There is no analogous case that would have put

Coffman on notice that the six-month or ten-month delay in providing Rhein a post-revocation

hearing violated due process.  *See Collvins v. Hackford*, 523 F. App'x 515, 520-21 (10th Cir.

2013) (holding that the defendants were entitled to qualified immunity on the plaintiff's claim

that an *eleven-month* delay in providing a post-deprivation hearing was constitutionally

excessive, explaining that "the determination of the constitutionality of a delay is a fact-intensive

analysis based on the [*Mallen*] factors" and that "[t]here is no precedent sufficiently on point

with this case that could have put Defendants on notice that the delay was unconstitutional");

*Torbeck v. Zoon*, 1997 WL 532496, at *2-3 (4th Cir. Aug. 29, 1997) (citable pursuant to 4th Cir.

Rule 32.1) (same, where there was a *two-year* delay in holding a hearing after the plaintiff's business license was suspended).

In an effort to find a closely corresponding case, Rhein cites *Spinelli*, where the Second Circuit in 2009 held that a 58-day delay in providing a post-deprivation hearing following the suspension of the plaintiff's gun dealer license violated due process given that the plaintiff could not earn income while it awaited a hearing. 579 F.3d at 173-74. In so holding, the Second Circuit placed great emphasis on the strength of the plaintiff's interest in "pursuing a particular livelihood," quoting *Mallen* for the proposition that "[t]he Supreme Court has repeatedly recognized the severity of depriving someone of his or her livelihood," and observing that "the interim period between the erroneous deprivation and reinstatement can be financially devastating to the licensee." *Id*. at 171 (internal quotation marks omitted). The fact that the business license at issue in *Spinelli* allowed the plaintiff to engage in the business of selling guns was entirely incidental to the analysis; *Spinelli* is a business license case, not a gun ownership case. *Spinelli* would not have put Coffman on notice that the delay in *this* case was too long, given differences in the nature of the private interests at stake. Although Rhein's interest in his FOID card was substantial, Coffman reasonably could have believed, in light of *Spinelli*'s reliance on *Mallen* and focus on the financial aspects of the license suspension, that Rhein's interest did not rise to the level of the interest in pursuing one's livelihood at stake in *Spinelli*.

Thus, even if Coffman could fairly be charged with knowing that the Second Circuit had held that a 58-day delay in providing a hearing after the revocation of a gun dealer license necessary to the plaintiff's livelihood would violate due process, the same could not be said of a six-month or ten-month delay in processing an application to restore a FOID card. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but

18

existing precedent must have placed the statutory or constitutional question beyond debate."); *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009) ("the right that [the defendant] allegedly violated must be clearly established in a particularized sense") (internal quotations marks omitted); *cf. Shepard v. Madigan*, 734 F.3d 748, 749 (7th Cir. 2013) (noting that the court in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2013), had given the State of Illinois "210 days in which to enact a new gun law that would impose only reasonable restrictions on carrying guns outside the home, rather than the restrictions that we held [under the Second Amendment] to be unduly severe"). Even if that delay ultimately could be held to violate due process, the question is certainly not "beyond debate," which means that qualified immunity is appropriate. *Reichle*, 132 S. Ct. at 2093. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Al-Kidd*, 131 S. Ct. at 2085. Given the state of the law, Coffman was neither plainly incompetent nor a knowing violator of the law, and thus he is entitled to qualified immunity on the post-deprivation claim.

## Conclusion

For the foregoing reasons, Coffman's summary judgment motion is granted. Given this disposition, Rhein's summary judgment motion necessarily is denied.

August 6, 2015

_____

United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Rhein et al,

Plaintiff(s),

v.

Pryor et al,

Defendant(s).

Case No.  13 C 843

Judge

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐   in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

    which ☐ includes          pre–judgment interest.
    ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐   in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☒   other: Judgment is entered in favor of Defendants Hiram Grau and John Coffman and against Plaintiff David Rhein.  The claims involving the remaining parties have been voluntarily dismissed.

---

This action was *(check one)*:

☐ tried by a jury with Judge        presiding, and the jury has rendered a verdict.
☐ tried by Judge        without a jury and the above decision was reached.
☒ decided by Judge Gary Feinerman on a motion for summary judgment.

Date:  8/6/2015

Thomas G. Bruton, Clerk of Court

/s/  Jackie Deanes, Deputy Clerk

APPEAL,KIM,TERMED

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 6,1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:13-cv-00843
### Internal Use Only

Rhein et al v. Pryor et al

Assigned to: Honorable Gary Feinerman

Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 02/01/2013

Date Terminated: 08/06/2015

Jury Demand: Both

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

**Kim Rhein**
*TERMINATED: 08/11/2014*

represented by **Richard J. Dvorak**
Dvorak Law Offices, LLC
6262 Kingery Highway
Suite 305
Willowbrook, IL 60527
312-593-7146
Fax: 312-873-3869
Email:
richard.dvorak@civilrightsdefenders.com
*TERMINATED: 08/11/2014*
*LEAD ATTORNEY*

**Iveliz Maria Orellano**
Dvorak Law Offices, LLC
140 S. Dearborn
Suite 404
Chicago, IL 60603
(773) 218-6854
Email: iveliz.m.orellano@gmail.com
*TERMINATED: 08/11/2014*

**Plaintiff**

**David Rhein**

represented by **Richard J. Dvorak**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Iveliz Maria Orellano**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

### **Defendant**

**Agent Pryor**
*Star Nu7mber 4816, an Illinois State*
*Police Officer, in his individual capacity*
*TERMINATED: 08/11/2014*

represented by **Sunil Shashikant Bhave**
Illinois Attorney General
100 W. Randolph St., 13th Floor
Chicago, IL 60601
(312) 814-4450
Email: sbhave@atg.state.il.us
*TERMINATED: 08/11/2014*

**Thor Yukinobu Inouye**
Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601
(312) 814-3632
Email: tinouye@atg.state.il.us
*TERMINATED: 08/11/2014*

### **Defendant**

**Agent Summers**
*Star Number 5706, an Illinois State Police*
*Officer, In his individual capacity*
*TERMINATED: 08/11/2014*

represented by **Sunil Shashikant Bhave**
(See above for address)
*TERMINATED: 08/11/2014*

**Thor Yukinobu Inouye**
(See above for address)
*TERMINATED: 08/11/2014*

### **Defendant**

**Hiram Grau**
*Illinois State Police Director; in his*
*official capacity*
*TERMINATED: 03/20/2014*

represented by **Sunil Shashikant Bhave**
(See above for address)
*TERMINATED: 03/20/2014*

**Thor Yukinobu Inouye**
(See above for address)
*TERMINATED: 03/20/2014*

### **Defendant**

**Lisa Madigan**
*an Illinois Attorney General in her official*
*capacity*
*TERMINATED: 04/25/2013*

represented by **Sunil Shashikant Bhave**
(See above for address)
*TERMINATED: 04/25/2014*

**Thor Yukinobu Inouye**
(See above for address)
*TERMINATED: 04/25/2014*

**Defendant**

**John Coffman**
*Lieutanant, an Illinois State Police Officer,*
*in his individual capacity;*

represented by **Sunil Shashikant Bhave**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thor Yukinobu Inouye**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/01/2013 | 1 | COMPLAINT filed by Kim Rhein, David Rhein; Jury Demand. Filing fee $ 350, receipt number 0752-8005735.(Dvorak, Richard) (Entered: 02/01/2013) |
| 02/01/2013 | 2 | CIVIL Cover Sheet (Dvorak, Richard) (Entered: 02/01/2013) |
| 02/04/2013 | | CASE ASSIGNED to the Honorable Gary Feinerman. Designated as Magistrate Judge the Honorable Young B. Kim. (jn, ) (Entered: 02/04/2013) |
| 02/05/2013 | 3 | ATTORNEY Appearance for Plaintiffs David Rhein, Kim Rhein by Richard J. Dvorak (Dvorak, Richard) (Entered: 02/05/2013) |
| 03/08/2013 | 4 | MINUTE entry before Honorable Gary Feinerman:Initial status hearing set for 4/22/2013 at 9:30 a.m. Initial Status Report shall be filed by 4/15/2013. Please see Judge Feinerman's web page (http://www.ilnd.uscourts.gov, to "District Judges," to "Judge Gary Feinerman," to "Initial Status Hearings" under Case Management Procedures) for details on the initial status hearing and Initial Status Report.Mailed notice. (jlj) (Entered: 03/08/2013) |
| 03/22/2013 | | SUMMONS Issued as to Defendants Hiram Grau, Lisa Madigan, Agent Pryor, Agent Summers (tg, ) (Entered: 03/22/2013) |
| 03/26/2013 | 5 | ATTORNEY Appearance for Defendant Lisa Madigan by Sunil Shashikant Bhave (Bhave, Sunil) (Entered: 03/26/2013) |
| 04/08/2013 | 6 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM*and, alternatively*, MOTION by Defendant Lisa Madigan to dismiss for lack of jurisdiction (Bhave, Sunil) (Entered: 04/08/2013) |
| 04/08/2013 | 7 | MEMORANDUM by Lisa Madigan in support of Motion to Dismiss for Failure to State a Claim, motion to dismiss/lack of jurisdiction 6 (Attachments: # 1 Exhibit Plaintiffs' Complaint, # 2 Exhibit CSWS v. Madigan, 2009 WL 1789368, # 3 Exhibit Sierakowski v. Ryan, 1999 WL 286290)(Bhave, Sunil) (Entered: 04/08/2013) |
| 04/08/2013 | 8 | NOTICE of Motion by Sunil Shashikant Bhave for presentment of Motion to Dismiss for Failure to State a Claim, motion to dismiss/lack of jurisdiction 6 before Honorable Gary Feinerman on 4/11/2013 at 09:00 AM. (Bhave, Sunil) (Entered: |

| | | 04/08/2013) |
|---|---|---|
| 04/11/2013 | 9 | ATTORNEY Appearance for Defendant Lisa Madigan by Thor Yukinobu Inouye (Inouye, Thor) (Entered: 04/11/2013) |
| 04/11/2013 | 10 | MINUTE entry before Honorable Gary Feinerman:Motion hearing held. Defendant Madigan's motion for partial dismissal 6 is entered and continued. Plaintiff indicated that he will dismiss his claims against Defendant Madigan if Defendant Grau appears and acknowledges that he is the official responsible for enforcing the challenged Illinois law and thus the proper defendant as to declaratory and injunctive relief. Status hearing scheduled for 4/22/2013 4 is stricken and re-set for 4/25/2013 at 9:30 a.m. Initial joint status report shall be filed by 4/18/2013. Mailed notice. (jlj) (Entered: 04/11/2013) |
| 04/18/2013 | 11 | ATTORNEY Appearance for Defendants Hiram Grau, Agent Pryor, Agent Summers by Sunil Shashikant Bhave (Bhave, Sunil) (Entered: 04/18/2013) |
| 04/18/2013 | 12 | MOTION by Defendants Hiram Grau, Agent Pryor, Agent Summers for extension of time to file answer regarding complaint 1 *or Otherwise Plead--UNOPPOSED* (Bhave, Sunil) (Entered: 04/18/2013) |
| 04/18/2013 | 13 | NOTICE of Motion by Sunil Shashikant Bhave for presentment of motion for extension of time to file answer, motion for relief 12 before Honorable Gary Feinerman on 4/25/2013 at 09:00 AM. (Bhave, Sunil) (Entered: 04/18/2013) |
| 04/18/2013 | 14 | STATUS Report by David Rhein, Kim Rhein (Dvorak, Richard) (Entered: 04/18/2013) |
| 04/18/2013 | 15 | NOTICE by All Plaintiffs re status report 14 (Dvorak, Richard) (Entered: 04/18/2013) |
| 04/24/2013 | 16 | MINUTE entry before Honorable Gary Feinerman:Defendants' unopposed motion for extension of time to answer or otherwise plead 12 is granted. The time for the Illinois State Defendants to answer or otherwise plead to the complaint is extended to 5/29/2013. Motion hearing scheduled for 4/25/2013 13 is stricken.Mailed notice. (jlj) (Entered: 04/24/2013) |
| 04/25/2013 | 17 | MINUTE entry before Honorable Gary Feinerman:Status hearing held and continued to 9/10/2013 at 9:00 a.m. Plaintiff's oral motion to voluntarily dismiss Defendant Lisa Madigan as a party defendant is granted. The Clerk of the Court shall terminate Lisa Madigan as a party defendant. Rule 26(a)(1) disclosures shall be served by 5/20/2013. Initial written discovery requests shall be served by 5/27/2013. Fact discovery shall close 9/23/2013. Dispositive motions shall be filed by 10/23/2013. Parties shall move to amend the pleadings and add new parties by 8/23/2013. If Defendants file a motion to dismiss on 5/29/2013, Plaintiffs' response will be due by 6/19/2013, and reply will be due by 7/3/2013. Mailed notice. (jlj) (Entered: 04/25/2013) |
| 05/29/2013 | 18 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachments: # 1 Supplement Memorandum In Support of Defendants' Motion to Dismiss, # 2 Notice of Filing Notice of Motion, # 3 Exhibit Exhibit A to Motion to Dismiss, # 4 Exhibit |

| | | Exhibit B to Motion to Dismiss, # 5 Exhibit Exhibit C to Motion to Dismiss) (Inouye, Thor) (Entered: 05/29/2013) |
|---|---|---|
| 05/29/2013 | 19 | NOTICE by Hiram Grau, Agent Pryor, Agent Summers re MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 18 (Inouye, Thor) (Entered: 05/29/2013) |
| 05/30/2013 | 20 | NOTICE of Motion by Thor Yukinobu Inouye for presentment of Motion to Dismiss for Failure to State a Claim, 18 before Honorable Gary Feinerman on 7/11/2013 at 09:00 AM. (Inouye, Thor) (Entered: 05/30/2013) |
| 05/30/2013 | 21 | ATTORNEY Appearance for Defendants Hiram Grau, Agent Pryor, Agent Summers by Thor Yukinobu Inouye (Inouye, Thor) (Entered: 05/30/2013) |
| 06/19/2013 | 22 | MOTION by Plaintiffs David Rhein, Kim Rhein to amend/correct complaint 1 (Attachments: # 1 Exhibit Amended Complaint)(Dvorak, Richard) (Entered: 06/19/2013) |
| 06/19/2013 | 23 | NOTICE of Motion by Richard J. Dvorak for presentment of motion to amend/correct, motion for relief 22 before Honorable Gary Feinerman on 7/11/2013 at 09:00 AM. (Dvorak, Richard) (Entered: 06/19/2013) |
| 07/03/2013 | 24 | REPLY by Hiram Grau, Agent Pryor, Agent Summers to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 18 (Attachments: # 1 Exhibit Pls. Original Complaint, # 2 Exhibit Pls. Am. Comp.)(Bhave, Sunil) (Entered: 07/03/2013) |
| 07/11/2013 | 25 | MINUTE entry before Honorable Gary Feinerman: Motion hearing held. For the reasons stated on the record, Defendant Lisa Madigan's motion to dismiss 6 is denied without prejudice as moot. For the reasons stated on the record, Defendants' motion to dismiss 18 is denied without prejudice as moot. For the reasons stated on the record, Plaintiffs' motion to amend complaint 22 is granted without prejudice to Defendants challenging the amended complaint on any grounds, including, without limitation, the statute of limitations and any other arguments set forth in their reply brief 24 . Plaintiffs shall file the amended complaint as a separate docket entry. Defendants shall filed their motion to dismiss by 8/1/2013; response due by 8/16/2013; reply due by 8/30/2013. The parties' oral motion to file oversized briefs is granted. The initial and response briefs may be 20 pages in length. Written discovery shall go forward. Deposition discovery is deferred pending resolution of the motion to dismiss. Status hearing set for 9/18/2013 at 9:30 a.m. Mailed notice (meg, ) (Entered: 07/12/2013) |
| 08/01/2013 | 26 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Bhave, Sunil) (Entered: 08/01/2013) |
| 08/01/2013 | 27 | MEMORANDUM by Hiram Grau, Agent Pryor, Agent Summers in support of Motion to Dismiss for Failure to State a Claim 26 (Bhave, Sunil) (Entered: 08/01/2013) |
| 08/01/2013 | 28 | EXHIBIT by Defendants Hiram Grau, Agent Pryor, Agent Summers regarding memorandum in support of motion 27 (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Bhave, Sunil) (Entered: 08/01/2013) |

| 08/16/2013 | 29 | *FIRST* AMENDED complaint by Kim Rhein, David Rhein against All Defendants (Dvorak, Richard) (Entered: 08/16/2013) |
| 08/16/2013 | 30 | RESPONSE by David Rhein, Kim Rheinin Opposition to Motion to Dismiss for Failure to State a Claim 26 (Dvorak, Richard) (Docket text modified by Clerk's Office.) (Entered: 08/16/2013) |
| 08/22/2013 | 31 | MOTION by Defendants John Coffman, Hiram Grau, Agent Pryor, Agent Summers for extension of time *UNOPPOSED* (Bhave, Sunil) (Entered: 08/22/2013) |
| 08/22/2013 | 32 | NOTICE of Motion by Sunil Shashikant Bhave for presentment of extension of time 31 before Honorable Gary Feinerman on 8/28/2013 at 09:00 AM. (Bhave, Sunil) (Entered: 08/22/2013) |
| 08/22/2013 | 33 | MINUTE entry before Honorable Gary Feinerman:Unopposed motion for extension of time 31 is granted. Defendants' reply brief in support of the motion to dismiss 26 shall be filed by 9/6/2013. Status hearings set for 9/10/2013 17 and 9/18/2013 25 are stricken and re-set for 10/10/2013 at 9:00 a.m. Motion hearing scheduled for 8/28/2013 32 is stricken.Mailed notice. (jlj) (Entered: 08/22/2013) |
| 09/06/2013 | 34 | REPLY by John Coffman, Hiram Grau, Agent Pryor, Agent Summers to response in opposition to motion 30 , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 26 , memorandum in support of motion 27 (Bhave, Sunil) (Entered: 09/06/2013) |
| 10/07/2013 | 35 | MINUTE entry before Honorable Gary Feinerman: Status hearing set for 10/10/2013 33 is stricken and re-set for 11/20/2013 at 9:00 a.m.Mailed notice. (jlj) (Entered: 10/07/2013) |
| 11/18/2013 | 36 | MINUTE entry before Honorable Gary Feinerman: Status hearing set for 11/20/2013 35 is stricken and re-set for 12/18/2013 at 9:30 a.m.Mailed notice. (jlj) (Entered: 11/18/2013) |
| 12/16/2013 | 37 | MINUTE entry before the Honorable Gary Feinerman:Status hearing set for 12/18/2013 36 is stricken and re-set for 1/27/2014 at 9:00 a.m.Mailed notice. (jlj) (Entered: 12/16/2013) |
| 01/24/2014 | 38 | MINUTE entry before the Honorable Gary Feinerman: Status hearing set for 1/27/2014 37 is stricken and re-set for 2/24/2014 at 9:00 a.m.Mailed notice. (jlj) (Entered: 01/24/2014) |
| 02/20/2014 | 39 | MINUTE entry before the Honorable Gary Feinerman: The court anticipates that the pending motion to dismiss 26 will be denied as to all of Plaintiffs' claims except for those claims alleging that the challenged statutes are facially unconstitutional. Accordingly, the stay of deposition discovery is lifted. Status hearing set for 2/24/2014 38 is stricken and re-set for 3/24/2014 at 9:30 a.m.Mailed notice. (jlj) (Entered: 02/20/2014) |
| 03/11/2014 | 40 | MINUTE entry before the Honorable Gary Feinerman:By agreement of the parties, status hearing set for 3/24/2014 39 is stricken and re-set for 3/17/2014 at 9:30 a.m.Mailed notice. (jlj) (Entered: 03/11/2014) |

| | | |
|---|---|---|
| 03/17/2014 | 41 | MINUTE entry before the Honorable Gary Feinerman:Status hearing held and continued to 6/5/2014 at 9:00 a.m. Discovery shall close 6/2/2014. Dispositive motions shall be filed by 6/30/2014. A ruling on the pending motion to dismiss will issue shortly.Mailed notice. (jlj) (Entered: 03/18/2014) |
| 03/20/2014 | 42 | MINUTE entry before the Honorable Gary Feinerman:For the reasons set forth in the accompanying Memorandum Opinion and Order, Defendants' motion to dismiss 26 is granted in part and denied in part. Plaintiffs' facial challenge to the constitutionality of 430 ILCS 65/8(f) is dismissed without prejudice for lack of standing. Plaintiffs' individual capacity damages claims may proceed. The Clerk is directed to terminate Hiram Grau as a party defendant. Defendants Pryor, Summers, and Coffman shall answer the surviving portions of the amended complaint 29 by 4/10/2014.Mailed notice. (jlj) (Entered: 03/20/2014) |
| 03/20/2014 | 43 | MEMORANDUM Opinion and Order Written by the Honorable Gary Feinerman on 3/20/2014.Mailed notice.(jlj) (Entered: 03/20/2014) |
| 04/09/2014 | 44 | ANSWER to amended complaint *with Affirmative Defenses and Jury Demand* by John Coffman, Agent Pryor, Agent Summers(Bhave, Sunil) (Entered: 04/09/2014) |
| 05/05/2014 | 45 | MOTION by Defendants John Coffman, Agent Pryor, Agent Summers for extension of time to complete discovery *JOINT MOTION* (Bhave, Sunil) (Entered: 05/05/2014) |
| 05/05/2014 | 46 | NOTICE of Motion by Sunil Shashikant Bhave for presentment of motion for extension of time to complete discovery 45 before Honorable Gary Feinerman on 5/12/2014 at 09:00 AM. (Bhave, Sunil) (Entered: 05/05/2014) |
| 05/06/2014 | 47 | MINUTE entry before the Honorable Gary Feinerman:Motion for extension of time to complete discovery 45 is granted. The discovery deadline is extended to 7/15/2014. The dispositive motion deadline is extended to 8/12/2014. Motion hearing scheduled for 5/12/2014 46 is stricken. Status hearing set for 6/5/2014 41 is stricken and re-set for 7/8/2014 at 9:00 a.m.Mailed notice. (jlj) (Entered: 05/06/2014) |
| 06/13/2014 | 48 | MOTION by Defendants John Coffman, Agent Pryor, Agent Summers to take deposition of Alan Childs and Michelle Howell *and examine pertinent records, UNOPPOSED* (Bhave, Sunil) (Entered: 06/13/2014) |
| 06/13/2014 | 49 | NOTICE of Motion by Sunil Shashikant Bhave for presentment of motion to take deposition 48 before Honorable Gary Feinerman on 6/30/2014 at 09:00 AM. (Bhave, Sunil) (Entered: 06/13/2014) |
| 06/13/2014 | 50 | SEALED DOCUMENT by Defendants John Coffman, Agent Pryor, Agent Summers (Bhave, Sunil) (Entered: 06/13/2014) |
| 06/13/2014 | 51 | MOTION by Defendants John Coffman, Agent Pryor, Agent Summers to seal document sealed document 50 *UNOPPOSED* (Bhave, Sunil) (Entered: 06/13/2014) |
| 06/13/2014 | 52 | NOTICE of Motion by Sunil Shashikant Bhave for presentment of motion to seal document, motion for relief 51 before Honorable Gary Feinerman on 6/30/2014 at 09:00 AM. (Bhave, Sunil) (Entered: 06/13/2014) |

| 06/16/2014 | 53 | MINUTE entry before the Honorable Gary Feinerman:Unopposed motion for leave to take deposition of Dr. Alan Childs and Dr. Michelle Howell 48 is granted. Enter agreed order. Unopposed motion for leave to file document under seal 51 is granted. Motion hearings scheduled for 6/30/2014 49 and 52 are stricken. Mailed notice. (jlj, ) (Entered: 06/16/2014) |
| 06/16/2014 | 54 | ORDER Signed by the Honorable Gary Feinerman on 6/16/2014.Mailed notice.(jlj, ) (Entered: 06/16/2014) |
| 06/16/2014 | 55 | ATTORNEY Appearance for Plaintiffs David Rhein, Kim Rhein by Iveliz Maria Orellano (Orellano, Iveliz) (Entered: 06/16/2014) |
| 06/30/2014 | 56 | MOTION by Plaintiff David Rhein to quash *subpoenas* (Attachments: # 1 Exhibit A)(Dvorak, Richard) (Entered: 06/30/2014) |
| 06/30/2014 | 57 | NOTICE of Motion by Richard J. Dvorak for presentment of motion to quash 56 before Honorable Gary Feinerman on 7/8/2014 at 09:00 AM. (Dvorak, Richard) (Entered: 06/30/2014) |
| 07/08/2014 | 58 | MINUTE entry before the Honorable Gary Feinerman:Status hearing held. Motion hearing held. Plaintiff's motion to quash subpoena 56 is entered and continued to 7/16/2014 at 9:00 a.m. Dispositive motions shall be filed by 8/12/2014; responses due by 9/9/2014; replies due by 9/23/2014.Mailed notice. (jlj, ) (Entered: 07/09/2014) |
| 07/16/2014 | 59 | MINUTE entry before the Honorable Gary Feinerman:Motion hearing held. For the reason stated on the record, Plaintiff's motion to quash 56 is denied. Status hearing set for 11/18/2014 at 9:00 a.m. Mailed notice. (jlj, ) (Entered: 07/18/2014) |
| 08/08/2014 | 60 | MOTION by Plaintiffs David Rhein, Kim Rhein to dismiss Defendants Summers and Pryor, all claims asserted by Plaintiff Kim Rhein, and Plaintiffs' First, Second, and Fourth Amendment claims (Orellano, Iveliz) (Entered: 08/08/2014) |
| 08/08/2014 | 61 | NOTICE of Motion by Iveliz Maria Orellano for presentment of motion for miscellaneous relief 60 before Honorable Gary Feinerman on 8/14/2014 at 09:00 AM. (Orellano, Iveliz) (Entered: 08/08/2014) |
| 08/08/2014 | 62 | MOTION by Defendants John Coffman, Hiram Grau, Agent Pryor, Agent Summers for extension of time to file *Summary Judgment* (Bhave, Sunil) (Entered: 08/08/2014) |
| 08/08/2014 | 63 | NOTICE of Motion by Sunil Shashikant Bhave for presentment of motion for extension of time to file 62 before Honorable Gary Feinerman on 8/14/2014 at 09:00 AM. (Bhave, Sunil) (Entered: 08/08/2014) |
| 08/11/2014 | 64 | MINUTE entry before the Honorable Gary Feinerman:Agreed motion to voluntarily dismiss Defendants Pryor and Summers, all Claims asserted by Plaintiff Kim Rhein, and Plaintiff's First, Second and Fourth Amendment Claims 60 is granted. The claims against Defendants Pryor and Summers are dismissed with prejudice and without costs. The claims of Plaintiff Kim Rhein are dismissed with prejudice and without costs. The Clerk is directed to terminate Agent Pryor and Agent Summers as party defendants and to terminate Kim Rhein as a party plaintiff. Plaintiff David |

| | | |
|---|---|---|
| | | Rhein's First, Second, and Fourth Amendment claims are dismissed with prejudice and without costs. The only remaining claims are Plaintiff David Rheins due process claims against Defendant Coffman. Defendants' unopposed motion for extension of time to file cross-motion for summary judgment 62 is granted. The dispositive motion deadline is extended to 9/12/2014; responses due by 10/10/2014; replies due by 10/24/2014. Status hearing set for 11/18/2014 59 is stricken and re-set for 12/10/2014 at 9:00 a.m. Motion hearings scheduled for 8/14/2014 61 and 63 are stricken.Mailed notice. (jlj, ) (Entered: 08/11/2014) |
| 09/12/2014 | 65 | MOTION by Defendant John Coffman for summary judgment (Bhave, Sunil) (Entered: 09/12/2014) |
| 09/12/2014 | 66 | MEMORANDUM by John Coffman in support of motion for summary judgment 65 (Bhave, Sunil) (Entered: 09/12/2014) |
| 09/12/2014 | 67 | RULE 56 56.1(a)(3) Statement by John Coffman regarding motion for summary judgment 65 (Attachments: # 1 Exhibit Dep of John Coffman, # 2 Exhibit Pl. First Am. Complaint, # 3 Exhibit Dep of Steven Pryor, # 4 Exhibit Email of Steven Pryor, # 5 Exhibit Dep of David Rhein, # 6 Exhibit Declaration of Donna Fanning, # 7 Exhibit Dep of Larry Boggs, # 8 Exhibit Pl. Response to Request to Admit, # 9 Exhibit Letter of John Coffman, # 10 Exhibit Circuit Court Order, 2012 COMS 000003, # 11 Exhibit Dep of Alan Childs, # 12 Exhibit Dep of Michelle Howell) (Bhave, Sunil) (Entered: 09/12/2014) |
| 09/12/2014 | 68 | RULE 56.1(a)(3) Plaintiff's Undisputed Material Facts Statement (Attachments: # 1 Exhibit Exhibit A - Plaintiff's Deposition, # 2 Exhibit Exhibit B - Plaintiff's Affidavit, # 3 Exhibit Exhibit C - Defendant Coffman Deposition Group Exhibit No. 3, # 4 Exhibit Exhibit D - Exhibit D - Agent Summers' Deposition, # 5 Exhibit Exhibit E - Agent Pryor's Deposition, # 6 Exhibit Exhibit F - Defendant Coffman's Deposition, # 7 Exhibit Exhibit G - Defendant Coffman's Answers to Plaintiff's Interrogatories, # 8 Exhibit Exhibit H - Defendant Coffman Deposition Group Exhibit No. 2)(Orellano, Iveliz) (Entered: 09/12/2014) |
| 09/12/2014 | 69 | MOTION by Plaintiff David Rhein for summary judgment (Dvorak, Richard) (Entered: 09/12/2014) |
| 09/12/2014 | 70 | MEMORANDUM motion for summary judgment 69 by David Rhein (Dvorak, Richard) (Entered: 09/12/2014) |
| 09/15/2014 | 71 | ATTORNEY Appearance for Defendant John Coffman by Thor Yukinobu Inouye (Inouye, Thor) (Entered: 09/15/2014) |
| 10/08/2014 | 72 | MOTION by Plaintiff David Rhein for extension of time to file response/reply *UNOPPOSED* (Orellano, Iveliz) (Entered: 10/08/2014) |
| 10/08/2014 | 73 | NOTICE of Motion by Iveliz Maria Orellano for presentment of motion for extension of time to file response/reply 72 before Honorable Gary Feinerman on 10/14/2014 at 09:00 AM. (Orellano, Iveliz) (Entered: 10/08/2014) |
| 10/10/2014 | 74 | MINUTE entry before the Honorable Gary Feinerman:Plaintiff's unopposed motion for extension of time to respond to defendant's motion for summary judgment 72 is |

| | | |
|---|---|---|
| | | granted. The time for the parties to respond to each other's summary judgment motions 65 69 is extended to 10/13/2014. Motion hearing scheduled for 10/14/2014 73 is stricken.Mailed notice. (jlj, ) (Entered: 10/10/2014) |
| 10/13/2014 | 75 | RULE 56.1 (b)(3) Statement *in Response to Defendant's Local Rule 56.1(a)(3) Statement* (Attachments: # 1 Exhibit Dr. Howell Deposition, # 2 Exhibit Dr. Childs Deposition)(Orellano, Iveliz) (Entered: 10/13/2014) |
| 10/13/2014 | 76 | RESPONSE by John Coffmanin Opposition to MOTION by Plaintiff David Rhein for summary judgment 69 (Bhave, Sunil) (Entered: 10/13/2014) |
| 10/13/2014 | 77 | RESPONSE by Defendant John Coffman to Rule 56 statement,, 68 *Response to Plaintiff's 56.1 Statement of Undisputed Facts* (Attachments: # 1 Exhibit Deposition of John Coffman, # 2 Exhibit Deposition of Steven Pryor)(Bhave, Sunil) (Entered: 10/13/2014) |
| 10/13/2014 | 78 | RESPONSE by David Rheinin Opposition to MOTION by Defendant John Coffman for summary judgment 65 (Dvorak, Richard) (Entered: 10/13/2014) |
| 10/14/2014 | 79 | MOTION by Plaintiff David RheinLeave to File Additional Facts or for Alternative Relief and/or Motion to Strike Defendant's Purported Motions to Strike *in Defendant's Response to Plaintiff's Statement of Facts* (Orellano, Iveliz) (Entered: 10/14/2014) |
| 10/14/2014 | 80 | NOTICE of Motion by Iveliz Maria Orellano for presentment of motion for miscellaneous relief, 79 before Honorable Gary Feinerman on 10/21/2014 at 09:00 AM. (Orellano, Iveliz) (Entered: 10/14/2014) |
| 10/15/2014 | 81 | RESPONSE by John Coffmanin Opposition to MOTION by Plaintiff David RheinLeave to File Additional Facts or for Alternative Relief and/or Motion to Strike Defendant's Purported Motions to Strike *in Defendant's Response to Plaintiff's Statement of Facts* 79 (Bhave, Sunil) (Entered: 10/15/2014) |
| 10/15/2014 | 82 | MINUTE entry before the Honorable Gary Feinerman:Plaintiff's motion seeking leave to file additional facts or for alternative relief, and plaintiff's motion to strike defendant's purported motions to strike 79 is granted. Plaintiff is given retroactive leave to file an additional 21 statements of fact to his LR 56.1(a)(3) statement. Defendant has already responded to the additional statements of fact, and in any event Plaintiff likely could have formatted the substance of his LR 56.1(a)(3) statement into 80 or fewer paragraphs. Motion hearing scheduled for 10/21/2014 80 is stricken.Mailed notice. (jlj, ) (Entered: 10/15/2014) |
| 10/24/2014 | 83 | REPLY by John Coffman to response in opposition to motion 78 (Bhave, Sunil) (Entered: 10/24/2014) |
| 10/24/2014 | 84 | REPLY by David Rhein to response in opposition to motion 76 (Dvorak, Richard) (Entered: 10/24/2014) |
| 12/08/2014 | 85 | MINUTE entry before the Honorable Gary Feinerman: Status hearing set for 12/10/2014 64 is stricken and re-set for 1/21/2015 at 9:00 a.m.Mailed notice. (jlj, ) (Entered: 12/08/2014) |

| 01/16/2015 | 86 | MINUTE entry before the Honorable Gary Feinerman: Status hearing set for 12/21/2014 85 is stricken and re-set for 2/25/2015 at 9:00 a.m. Mailed notice (lcw, ) (Entered: 01/16/2015) |
| 01/20/2015 | 87 | NOTICE by Richard J. Dvorak of Change of Address (Dvorak, Richard) (Entered: 01/20/2015) |
| 02/23/2015 | 88 | MINUTE entry before the Honorable Gary Feinerman: The 2/25/2015 status hearing 86 is stricken and reset for 3/25/2015 at 9:00 a.m. Mailed notice (lcw, ) (Entered: 02/23/2015) |
| 03/23/2015 | 89 | MINUTE entry before the Honorable Gary Feinerman: The 3/25/2015 status hearing 88 is stricken and re-set for 4/28/2015 at 9:00 a.m. Mailed notice (lcw, ) (Entered: 03/23/2015) |
| 04/24/2015 | 90 | MINUTE entry before the Honorable Gary Feinerman:The status hearing set for 4/28/2015 89 is stricken and re-set for 5/26/2015 at 9:00 a.m.Mailed notice. (jlj, ) (Entered: 04/24/2015) |
| 05/13/2015 | 91 | MOTION by Plaintiff David Rhein for Leave to Cite Additional Authority in Support of Plaintiff's Summary Judgment Motion (Attachments: # 1 Exhibit Armstrong v. Daily, et. al., Nos. 13-3424, 13-3482 (7th Cir. May 11, 2015)) (Orellano, Iveliz) (Entered: 05/13/2015) |
| 05/13/2015 | 92 | NOTICE of Motion by Iveliz Maria Orellano for presentment of motion for miscellaneous relief, 91 before Honorable Gary Feinerman on 5/20/2015 at 09:00 AM. (Orellano, Iveliz) (Entered: 05/13/2015) |
| 05/18/2015 | 93 | MINUTE entry before the Honorable Gary Feinerman:Plaintiff's motion for leave to cite additional authority in support of his motion for summary judgment 91 is denied without prejudice. Plaintiff may renew his motion if he very briefly explains which portion of the Armstrong opinion is relevant to which arguments he made in his summary judgment papers. Motion hearing set for 5/20/2015 92 is stricken.Mailed notice. (jlj, ) (Entered: 05/18/2015) |
| 05/20/2015 | 94 | MOTION by Plaintiff David Rheinfor Leave to Cite Additional Authority in Support of Plaintiff's Summary Judgment Motion and in Opposition to Defendant's Motion for Summary Judgment (Orellano, Iveliz) (Entered: 05/20/2015) |
| 05/20/2015 | 95 | NOTICE of Motion by Iveliz Maria Orellano for presentment of motion for miscellaneous relief 94 before Honorable Gary Feinerman on 5/26/2015 at 09:00 AM. (Orellano, Iveliz) (Entered: 05/20/2015) |
| 05/22/2015 | 96 | MINUTE entry before the Honorable Gary Feinerman:Plaintiff's renewed motion for leave to cite additional authority in support of his motion for summary judgment and in opposition to defendant's motion for summary judgment 94 is granted. Motion hearing set for 5/26/2015 95 is stricken. Status hearing set for 5/26/2015 90 is stricken and re-set for 6/15/2015 at 9:00 a.m.Mailed notice. (jlj, ) (Entered: 05/22/2015) |
| 06/12/2015 | 97 | MINUTE entry before the Honorable Gary Feinerman: Status hearing set for 6/15/2015 96 is stricken and re-set for 7/20/2015 at 9:00 a.m.Mailed notice. (jlj, ) |

|  |  | (Entered: 06/12/2015) |
|---|---|---|
| 07/16/2015 | 98 | MINUTE entry before the Honorable Gary Feinerman: Status hearing set for 7/20/2015 97 is stricken and re-set for 8/17/2015 at 9:00 a.m.Mailed notice. (jlj, ) (Entered: 07/16/2015) |
| 08/06/2015 | 99 | MINUTE entry before the Honorable Gary Feinerman:For the reasons set forth in the accompanying Memorandum Opinion and Order, Defendant John Coffman's summary judgment motion 65 is granted and Plaintiff David Rhein's summary judgment motion 69 is denied. Enter judgment order. Status hearing set for 8/17/2015 58 is stricken. Civil case closed.Mailed notice. (jlj, ) (Entered: 08/06/2015) |
| 08/06/2015 | 100 | MEMORANDUM Opinion and Order Written by the Honorable Gary Feinerman on 8/6/2015.Mailed notice.(jlj, ) (Entered: 08/06/2015) |
| 08/06/2015 | 101 | ENTERED JUDGMENT on 8/6/2015.Mailed notice.(jlj, ) (Entered: 08/06/2015) |
| 08/28/2015 | 102 | NOTICE of appeal by David Rhein regarding orders 100 , 101 , 99 Filing fee $ 505, receipt number 0752-11028293. (Dvorak, Richard) (Entered: 08/28/2015) |
| 08/28/2015 | 103 | DOCKETING Statement by David Rhein regarding notice of appeal 102 (Dvorak, Richard) (Entered: 08/28/2015) |
| 08/31/2015 | 104 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 102 . (ea, ) (Entered: 08/31/2015) |