No. 15-2867

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| DAVID RHEIN, | ) Appeal from the United States |
| | ) District Court for the Northern |
| Plaintiff-Appellant, | ) District of Illinois, Eastern |
| | ) Division |
| v. | ) |
| | ) No. 13-843 |
| JOHN COFFMAN, Lieutenant, an Illinois | ) |
| State Police Officer, in his individual capacity, | ) The Honorable |
| | ) GARY S. FEINERMAN, |
| Defendant-Appellee. | ) Judge Presiding. |

## BRIEF OF DEFENDANT-APPELLEE

**LISA MADIGAN**
Attorney General
State of Illinois

**CAROLYN E. SHAPIRO**
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorneys for Defendant-Appellee.

**FRANK H. BIESZCZAT**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2234
Fbieszczat@atg.state.il.us

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.    Lieutenant Coffman Is Entitled To Summary Judgment Unless A
           Reasonable Jury Could Return A Verdict In Rhein's Favor. . . . . . . . . 12

    II.   Rhein Did Not Present Evidence From Which A Reasonable Jury
           Could Find That Lieutenant Coffman Was Personally Involved In
           The Review Process Before August 8, 2011, Or After February 1,
           2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

         A.    Rhein failed to show that Lieutenant Coffman may be held
               liable for not providing a decision or in-person hearing before
               August 8, 2011, when he received Rhein's request. . . . . . . . . . 13

         B.    Rhein failed to show that Lieutenant Coffman was personally
               involved in the review process after he transferred to another
               division on February 1, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    III.  Rhein Failed To Show That He Had A Clearly Established Right To
           Obtain A Decision Or In-Person Hearing Within Six Months Of His
           Request To Restore His Eligibility For A FOID Card. . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Certificate of Compliance with Fed. R. App. P. 32 . . . . . . . . . . . . . . . . . . . . . addendum

Certificate of Filing and Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . addendum

# TABLE OF AUTHORITIES

**CASES**

*Abbott v. Sangamon County*,
    705 F.3d 706 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Anderson v. Creighton*,
    483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Armstrong v. Daily*,
    786 F.3d 529 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Armstrong v. Manzo*,
    380 U.S. 545 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Aschroft v. al-Kidd*,
    131 S. Ct. 2074 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Barry v. Barchi*,
    443 U.S. 55 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Burritt v. Ditlefsen*,
    807 F.3d 239 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Buttitta v. City of Chicago*,
    9 F.3d 1198 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*City & County of San Francisco v. Sheehan*,
    135 S. Ct. 1765 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Commonwealth Plaza Condo. Ass'n v. City of Chicago*,
    693 F.3d 743 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Crue v. Aiken*,
    370 F.3d 668 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Delapaz v. Richardson*,
    634 F.3d 895 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Doe v. Heck*,
    327 F.3d 492 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gustafson v. Jones*,
    117 F.3d 1015 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kuck v. Danaher*,
    600 F.3d 159 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19, 25

*Matz v. Klotka*,
    769 F.3d 517 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Montgomery v. Am. Airlines, Inc.*,
    626 F.3d 382 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mullenix v. Luna*,
    136 S. Ct. 305 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Pearson v. Callahan*,
    555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Plumhoff v. Rickard*,
    134 S. Ct. 2012 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Reichle v. Howards*,
    132 S. Ct. 2088 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Shinault v. Hawks,*
 782 F.3d 1053 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Spinelli v. City of New York,*
 579 F.3d 160 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23, 24

*Tavarez v. O'Malley,*
 826 F.2d 671 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Taylor v. Barkes,*
 135 S. Ct. 2042 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United Cent. Bank v. KMWC 845, LLC,*
 800 F.3d 307 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

*United States v. Skoien,*
 614 F.3d 638 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Whitlock v. Brueggemann,*
 682 F.3d 567 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wozniak v. Conry,*
 236 F.3d 888 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## OTHER AUTHORITIES

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 58 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

430 ILCS 65/2 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

430 ILCS 65/8 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

430 ILCS 65/10 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 13

430 ILCS 65/11 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

735 ILCS 5/3-101 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20 Ill. Admin. Code § 1230.70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 14

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant David Rhein's jurisdictional statement is not complete and correct. Defendant-Appellee Lieutenant John Coffman submits this jurisdictional statement as required by Circuit Rule 28(b).

Rhein and his wife filed an amended complaint under 42 U.S.C. § 1983, alleging that Lieutenant Coffman, the former Chief of the Firearms Services Bureau of the Illinois State Police (State Police), and Special Agents Steven Pryor and Freddie Summers violated their rights under the Second, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. R. 201-06. They also raised a facial challenge to section 8(f) of the Illinois Firearm Owners Identification Card Act (Act), 430 ILCS 65/8(f), while seeking a declaratory judgment and injunction preventing State Police Director Hiram Grau from enforcing that provision against them. R. 204-06. Because those claims were brought pursuant to federal statutory law, the district court had federal question jurisdiction under 28 U.S.C. § 1331.

The district court dismissed the facial challenge to section 8(f) for lack of standing (R. 252), and it later dismissed the rest of the claims by agreement except for Rhein's section 1983 claim against Lieutenant Coffman based on the Due Process Clause of the Fourteenth Amendment (R. 328). On August 6, 2015, the district court granted summary judgment in favor of Lieutenant Coffman (R. 1333-51; App. 3-21) and entered a separate judgment under Federal Rule of Civil Procedure 58 (R. 1352; App. 2). No motions to alter or amend the judgment were filed. On August 28, 2015, Rhein filed a

notice of appeal (R. 1353), which was timely under Federal Rule of Appellate Procedure 4(a)(1)(A).  This Court therefore has jurisdiction over Rhein's appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether Lieutenant Coffman was personally involved in the review of Rhein's request to restore his eligibility for a Firearm Owners Identification (FOID) card only from August 8, 2011, when the Firearms Services Bureau received Rhein's request to February 1, 2012, when Lieutenant Coffman transferred to another division of the State Police.

2.      Whether Rhein failed to identify any existing precedent or a robust consensus of persuasive authority clearly establishing that he had a procedural due process right to obtain a decision or in-person hearing within six months of his request to restore his eligibility for a FOID card.

**STATEMENT OF THE CASE**[1]

**Statutory and Regulatory Background**

Under the Act, Illinois residents generally may not acquire or possess a firearm in Illinois without a FOID card issued by the State Police. 430 ILCS 65/2 (2014). The State Police may revoke a FOID card under section 8 of the Act for a number of reasons including, as relevant here, that the cardholder's mental condition poses a "clear and present danger" to himself or anyone else. 430 ILCS 65/8(f) (2014). The cardholder may seek relief from a FOID card revocation from the State Police. 430 ILCS 65/10 (2014); 20 Ill. Admin. Code § 1230.70(a), as amended at 27 Ill. Reg. 10312-13 (eff. June 26, 2003).[2]

Once a cardholder has provided the State Police with written notice of his intent to seek relief, the State Police conducts an investigation and, if the Director wants more information, a fact-finding conference with the petitioner may be conducted. 20 Ill.

---

[1] Because this Court construes all facts and reasonable inferences in the light most favorable to the party against whom summary judgment was entered when cross-motions for summary judgment have been filed, *United Cent. Bank v. KMWC 845, LLC*, 800 F.3d 307, 310-11 (7th Cir. 2015), this Statement of the Case presents the evidence before the district court in the light most favorable to Rhein and resolves all conflicts in his favor.

[2] The regulation governing the review process has been amended since Rhein obtained the relief he was seeking, although it has remained the same in many respects. *Compare* 20 Ill. Admin. Code § 1230.70, amended at 27 Ill. Reg. 10308 (eff. June 26, 2003) *with* 20 Ill. Admin. Code § 1230.70, amended at 38 Ill. Reg. 2301 (eff. Dec. 31, 2013). The regulation now provides that a person whose FOID card was revoked under section 8(f) "must provide information refuting the finding that he or she presents a clear and present danger" and that "[t]he appeal process will not begin until the Department has received all the necessary information." 20 Ill. Admin. Code § 1230.70(d)(5), (e), amended at 38 Ill. Reg. 2316-17 (eff. Dec. 31, 2013).

-4-

Admin. Code § 1230.70(b-c), as amended at 27 Ill. Reg. 10313 (eff. June 26, 2003).  The Director may restore the cardholder's eligibility to possess a FOID card as a result of the investigation or fact-finding conference, and the petitioner may also request a hearing conducted by an administrative law judge.  20 Ill. Admin. Code § 1230.70(c-f), as amended at 27 Ill. Reg. 10313 (eff. June 26, 2003).  The Director's final decision is subject to judicial review under the Illinois Administrative Review Law, 735 ILCS 5/3-101 *et seq.* (2014).  430 ILCS 65/11 (2014).

**Factual Background**

On February 3, 2011, Lieutenant Coffman revoked Rhein's FOID card under section 8(f) because he determined that Rhein's mental condition posed a "clear and present danger" to others.  R. 483, 893, 898, 934, 963-64.  Lieutenant Coffman had previously received a request to revoke Rhein's FOID card from a State Police agent due to threats Rhein had made at the office of Illinois State Representative Anthony DeLuca.  R. 928-30.  The request included documents Rhein had left at Representative DeLuca's office and a summary of statements Rhein had made to Donna Fanning, Representative DeLuca's district manager, between March 10, 2010, and February 1, 2011.  R. 557-77, 591-601.

The packets of documents included a letter stating that Representative DeLuca "should hang for treason for allowing this state and federal government to piss and shit all over 'we the people's' individual rights."  R. 595.  Included in the documents were copies of the United States and Illinois Constitutions, the Declaration of Independence,

and a biography of Illinois Attorney General Lisa Madigan.  R. 596-601.  Rhein wrote comments on those documents, stating that "now you know why so many of you people or going to be shot because your too selfish too understand the truth" and "you all need to take a step back and look at what your doing too this State before we the people go Second Amendment on your asses."  R. 596, 598 (original spelling preserved).  Rhein also referenced the Second Amendment before writing "now you know why you may be next," drawing a crosshairs symbol, and stating "I would be more than happy too meet with our government in any court in this land."  R. 597 (original spelling preserved).

Fanning related that Rhein had told her he was "ready to start shooting people" and is "a member of the Illinois State Militia," he would "kick [the Governor's] ass," 2012 would be a year "of revolution and overthrowing the government," the people were organizing a militia, and "I hope the rep is ready for what is coming."  R. 561-66.  Rhein also referred to himself as a "sacrifice lamb."  R. 564-65.  Lieutenant Coffman also learned that Rhein had attempted to purchase a gun on January 29, 2011.  R. 567, 959-60.

After Lieutenant Coffman made the decision to revoke Rhein's FOID card, State Police Special Agents Summers and Pryor went to Rhein's home and confiscated his guns.  R. 541-42, 757-58, 838-39.  Rhein also received a letter from Lieutenant Coffman dated February 3, 2011, which notified Rhein that his FOID card had been revoked under section 8(f).  R. 483, 543.  The letter stated, in relevant part: "Individuals disagreeing with this decision may request a document review by the department.  In

order to enable an effective evaluation, those seeking this review are strongly encouraged to provide this office with the following documents." R. 483. The listed documents were a letter of recommendation from the State Police zone office that had requested the revocation, a letter from a psychiatrist or registered clinical psychologist attesting to Rhein's ability to possess firearms, and three or more character reference letters. *Id.* The letter also provided Rhein with a phone number he could call if he had any questions. *Id.*

The legal department of the State Police determined the content of the letter, which was a standard letter that had been in place since before Lieutenant Coffman became chief of the Firearms Services Bureau. R. 921-922, 994, 1005-06. The State Police typically granted relief from a revocation under section 8(f) through a document review, which did not include an in-person hearing, if the petitioner provided the State Police with the documents listed in the letter and there was no objection from the agency that had requested the revocation. R. 988, 1009.

Six months later, on August 8, 2011, the State Police's Firearms Services Bureau received a letter from Rhein's attorney asking Lieutenant Coffman to reinstate Rhein's FOID card, along with a letter from Dr. Alan P. Childs, a clinical psychologist who opined that Rhein was not a danger to himself or others, and three character reference letters. R. 631-38, 1022. Rhein's attorney did not request an in-person hearing in this letter. R. 634-35. The Firearms Services Bureau then initiated a document review by placing the documents in Rhein's file, sending information requests to Representative

DeLuca's office and the State Police zone office from which the revocation request had originated, and waiting for their responses, *see* 20 Ill. Admin. Code § 1230.70(c), as amended at 27 Ill. Reg. 10313 (eff. June 26, 2003). R. 1021-25. At some point, Lieutenant Coffman was informed that Rhein had again contacted Representative DeLuca's office a few months after his FOID card was revoked, blaming Representative DeLuca for the revocation. R. 639, 1021, 1032-34. On September 23, 2011, the Firearms Services Bureau received a letter from Rhein's attorney asking about the status of his request for relief. R. 640, 1020, 1028.

Four months later, on January 24, 2012, Lieutenant Coffman received a letter from Rhein's attorney requesting a hearing under section 10(a) of the Act, 430 ILCS 65/10(a) (2014). R. 641-42. He then directed a Firearms Services Bureau employee to advise the legal department of the hearing request and to contact Rhein's attorney. R. 643, 1029-31. Generally, if a petitioner asked for an in-person hearing, the Firearms Services Bureau would forward his file to the legal department after all the requested documents had been submitted, and the chief of the legal department would decide whether to grant the request. R. 992-93, 998-99. However, Lieutenant Coffman would sometimes forward a file to the legal department even if the petitioner did not provide a letter from the law enforcement agency that had requested the revocation because he understood that letter might be difficult to obtain. R. 1000-02, 1013-14. While it might take months or over a year to conduct an in-person hearing due to staffing shortages, every person who requested such a hearing would receive one. R. 989-90, 1011.

Lieutenant Coffman transferred out of the Firearms Services Bureau on February 1, 2012, and had no further involvement with Rhein's request for reinstatement and an in-person hearing. R. 1031-32. On June 5, 2012, the State Police issued a letter informing Rhein that he was again eligible for a FOID card. R. 543, 654.[3] Rhein's guns were returned that August. R. 543, 555, 654.

**Procedural Background**

Rhein and his wife filed a complaint against Lieutenant Coffman, Special Agents Pryor and Summers, and Director Grau, alleging violations of their rights under the Second, Fourth, Fifth, and Fourteenth Amendments and raising a facial challenge to section 8(f) of the Act (R. 1-6), which they later amended (R. 201-06). The district court dismissed the challenge to section 8(f) of the Act for lack of standing (R. 252), and later dismissed all the remaining claims by agreement except for Rhein's claim that Lieutenant Coffman failed to provide sufficient procedural protections both before and after revoking his FOID card (R. 328).

Rhein and Lieutenant Coffman filed cross-motions for summary judgment. R. 329-47, 1079-96. Rhein argued that Lieutenant Coffman violated his right to procedural due process by revoking his FOID card without a pre-deprivation hearing and by not providing a prompt post-deprivation hearing. R. 1086-96. Lieutenant Coffman contended that he was entitled to qualified immunity because Rhein could not show that

---

[3] Rhein filed a petition for relief from the revocation of his FOID card in state court on April 27, 2012 (R. 1058-60), and while Rhein claims in the Issues Presented for Review of his opening brief that "a judge ordered reinstatement of [his] gun license" (AT Br. 1), nothing in the record suggests that the court granted his petition.

he had a clearly established right either to a pre-deprivation hearing, in light of the threatening statements he directed at Representative DeLuca, or to a more expedient post-deprivation hearing. R. 339-46.

The district court granted summary judgment in favor of Lieutenant Coffman and denied Rhein's cross-motion for summary judgment. R. 1333-51; App. 3-21. The court applied the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and held that Rhein was not entitled to a pre-deprivation hearing because Lieutenant Coffman could have reasonably concluded that Rhein presented a "clear and present danger" based on the threatening statements he had made and because Rhein could challenge the revocation after it occurred. R. 1339-46; App. 9-16. The court also concluded that Lieutenant Coffman was entitled to qualified immunity from the claim that he did not provide Rhein with a prompt post-deprivation hearing. R. 1346-51; App. 16-21. In doing so, the court found that Lieutenant Coffman was personally involved in the State Police's review process only from August 8, 2011, when the Firearms Services Bureau received Rhein's request for relief, to February 1, 2012, when Lieutenant Coffman transferred out of the Firearms Services Bureau. R. 1347; App. 17. The court then determined that Rhein had not shown that he had a clearly established right to obtain a decision on his request for relief or an in-person hearing within that period of time. R. 1347-51; App. 17-21. The court entered a separate judgment under Federal Rule of Civil Procedure 58 (R. 1352; App. 2), and Rhein filed a notice of appeal (R. 1353).

## SUMMARY OF ARGUMENT

This Court should affirm summary judgment in its entirety. Rhein does not challenge the district court's conclusion that he was not entitled to a pre-deprivation hearing, but rather seeks reversal only of its determination that Lieutenant Coffman was entitled to judgment on the claim that he did not provide a sufficiently prompt post-deprivation hearing.

Lieutenant Coffman was personally involved in the review of Rhein's request to restore his right to a FOID card for only the six-month period that began when the Firearms Services Bureau received Rhein's request and ended when Lieutenant Coffman transferred to another division. Lieutenant Coffman did not prevent Rhein from seeking relief prior to August 8, 2011, and had no control over if or when Rhein received a decision or in-person hearing after he left the Firearms Services Bureau on February 1, 2012.

Rhein has not identified existing precedent or a robust consensus of persuasive authority that clearly establishes a right to a decision or in-person hearing within six months of his request. Although Rhein argues that he had a clearly established right to a "prompt" hearing that was not "unreasonably prolonged," the cases he cites do not define that generalized right in a particularized way that is applicable to this case. And his single persuasive authority is not closely analogous to this case because it involved a private interest and review process that are substantially different than those at issue here.

## ARGUMENT

**I.    Lieutenant Coffman Is Entitled To Summary Judgment Unless A Reasonable Jury Could Return A Verdict In Rhein's Favor.**

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, a plaintiff must present sufficient evidence to permit a reasonable jury to find in his favor on every element of his cause of action. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). This Court reviews a district court's grant of summary judgment *de novo*, construing all facts in favor of the party against whom judgment was granted. *United Cent. Bank*, 800 F.3d at 310-11.

**II.   Rhein Did Not Present Evidence From Which A Reasonable Jury Could Find That Lieutenant Coffman Was Personally Involved In The Review Process Either Before August 8, 2011, Or After February 1, 2012.**

To survive summary judgment on a section 1983 claim, the plaintiff must produce evidence showing that the defendant personally caused or participated in the alleged constitutional deprivation. *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Rhein claims that Lieutenant Coffman may be held liable for not providing a post-deprivation hearing from February 3, 2011, when Lieutenant Coffman revoked his FOID card, to June 5, 2012, when his right to possess a FOID card was restored. AT Br. 14-18. On this record, however, no reasonable jury could find that Lieutenant Coffman was

personally involved in the review of Rhein's request for relief either before the Firearms Services Bureau received it on August 8, 2011, or after he transferred to another division on February 1, 2012.

> **A.** **Rhein failed to show that Lieutenant Coffman may be held liable for not providing a decision or in-person hearing before August 8, 2011, when he received Rhein's request.**

Although Lieutenant Coffman issued the letter informing Rhein that his FOID card had been revoked on February 3, 2011 (R. 483), Rhein's attorney did not ask him to reinstate Rhein's FOID card until August 8, 2011, six months later (R. 631-38, 1022). Rhein nonetheless argues that Lieutenant Coffman should be held liable for the lack of relief or an in-person hearing during those six months. AT Br. 16-18. Rhein claims that, by sending him the revocation letter that "strongly encouraged" him to provide the State Police with letters from the relevant law enforcement agency, a psychiatrist or clinical psychologist, and three character references, Lieutenant Coffman imposed conditions he had to meet to obtain relief or an in-person hearing that are not in section 10 of the Act, 430 ILCS 65/10 (2014), and caused him to wait six months to submit his request. AT Br. 16-18.

But the revocation letter imposed no conditions. Instead, it advised Rhein of the documents that would be helpful to the State Police in evaluating his request to restore his eligibility for a FOID card. R. 483. Moreover, Lieutenant Coffman did not write the revocation letter, nor did he prevent Rhein from seeking relief, as Rhein was granted a document review and the relief he was seeking even though he never submitted all the

documents listed in the revocation letter. R. 654. And although Rhein did not receive an in-person hearing, he did not have a procedural due process right to one and no such hearing was necessary in this case.

Procedural due process does not require a formal adversarial hearing in every case, as an evidentiary hearing is required only if there is a material factual dispute. *Wozniak v. Conry*, 236 F.3d 888, 890 (7th Cir. 2001). Here, the Firearms Services Bureau initiated the document review process after it received Rhein's letter on August 8, 2011, by placing the letter and the accompanying documents in his file and asking for information from Representative DeLuca's office and the State Police zone office that had requested the revocation. R. 1021, 1023-24; *see* 20 Ill. Admin. Code § 1230.70(c), amended at 27 Ill. Reg. 10313 (eff. June 25, 2003). Rhein's eligibility for a FOID card was restored at the completion of this document review process although he never submitted a letter from the State Police zone office that had requested the revocation of his FOID card and although no in-person hearing was held. R. 654. Thus, an in-person hearing was unnecessary in this case and Rhein is incorrect in claiming that he could not obtain review unless he provided the State Police with all the documents listed in the revocation letter, as he received not only a document review but also the relief he was seeking even though he did not submit all the information described in the letter.

Rhein also argues that the portion of the revocation letter encouraging him to submit specific documents is inconsistent with section 10 of the Act because the statute contains no preconditions to having a revocation reviewed. AT Br. 16-17. But not only

did the letter impose no such conditions, its compliance with the Act is not relevant to Rhein's due process claim, as it is well-established "that a state's violation of a state statute does not, as such, violate the federal Constitution," *Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 749-50 (7th Cir. 2012). Thus, Lieutenant Coffman did not prevent Rhein from seeking review of the revocation before August 2011.

> **B.   Rhein failed to show that Lieutenant Coffman was personally involved in the review process after he transferred to another division on February 1, 2012.**

After Lieutenant Coffman transferred out of the Firearms Services Bureau on February 1, 2012, he no longer had any role in the review of Rhein's request for relief or control over its progress. R. 1031-32. While Rhein concedes that Lieutenant Coffman "had no more involvement with Rhein's request for a hearing or reinstatement" after February 1, 2012, he nonetheless argues that Lieutenant Coffman was responsible for the lack of either a decision or an in-person hearing during the subsequent four months. AT Br. 14-16. But Lieutenant Coffman cannot be held liable for what occurred after his involvement in the review process had ended and someone else took his place. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) (section 1983 "requires that a defendant be personally involved in the alleged constitutional deprivation").

Although Rhein claims "[t]here is no doubt that Coffman was at least one of the proximate causes of the delay" following his transfer from the Firearms Services Bureau, Rhein identifies no evidence from which a reasonable jury could reach that conclusion

given that Lieutenant Coffman had no role in how the State Police conducted its review of Rhein's request over the next four months. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (plaintiff must prove that defendant's conduct was both a "cause-in-fact" and a "proximate cause" of his injuries). To the extent Rhein claims that his constitutional rights were violated during that four-month period, he had to assert that claim against the officials who were in charge of the review process during that time. But because Lieutenant Coffman had no control over if or when the State Police resolved Rhein's request or conducted an in-person hearing after February 1, 2012, he cannot be held liable for any constitutional violation after that point. Thus, Lieutenant Coffman's personal involvement in the matter is limited to only the six-month period that began when the Firearms Services Bureau received Rhein's request and ended when he transferred to a different division.

## III. Rhein Failed To Show That He Had A Clearly Established Right To Obtain A Decision Or In-Person Hearing Within Six Months Of His Request To Restore His Eligibility For A FOID Card.

Qualified immunity shields an official from liability so long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant has raised a qualified immunity defense, the plaintiff then has the burden to demonstrate both that (1) his rights were violated and (2) "the law concerning the proffered right was clearly established at the time the challenged conduct occurred." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (internal quotation marks and

citation omitted). A right is clearly established only if all reasonable officials would agree that the actions at issue violate that right, meaning "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012), quoting *Aschroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). This standard "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal citations, quotation marks, and alterations omitted).

Here, the district court determined that Lieutenant Coffman was entitled to qualified immunity because, although Rhein had a general due process right to be heard "at a meaningful time and in a meaningful manner," *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), he did not identify any existing precedent clearly establishing how quickly an official must resolve a request to restore a gun license. R. 1347-51; App. 17-21. The district court was right.

Rhein initially complains that the court "punted" the issue of whether Lieutenant Coffman violated his right to procedural due process, the first prong of the qualified immunity analysis. AT Br. 18-20. But the Supreme Court has explained that the decision of whether to resolve a question of qualified immunity on the lack of clearly established law without first determining if a constitutional violation occurred is left to the sound discretion of the district court because it is in the best position to decide which approach is appropriate in light of the circumstances of that case. *Pearson v. Callahan*,

555 U.S. 223, 236-37 (2009) ("[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right"). Here, the district court found that there was no existing precedent clearly establishing that Rhein had a right to a more expeditious review of his request and noted that deciding the due process issue on the merits required a fact-specific balancing of interests. R. 1347-51; App. 17-21. The court was thus well within its discretion when it decided to resolve the qualified immunity issue on the second prong of the analysis.

Rhein concedes that he cannot identify any decisions from the Supreme Court or the Seventh Circuit that address how quickly the State Police must provide a decision or in-person hearing on a request for relief from a FOID card revocation to satisfy due process. AT Br. 31. But he claims that he had a clearly established right to a "prompt" hearing that was not "unreasonably prolonged" and that the Second Circuit's decision in *Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009), clearly established that Lieutenant Coffman violated his right to procedural due process in this case. AT Br. 32-37.

Rhein first argues that the court erred because he had a clearly established right to a "prompt" hearing that was not "unreasonably prolonged." AT Br. 32-34. But as the Supreme Court has recently reiterated, an asserted right cannot be defined at such a high level of generality in the context of qualified immunity. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Rather, the relevant inquiry is whether existing precedent rendered certain the conclusion that Lieutenant Coffman violated Rhein's right to due process in

the circumstances of this case. *See id.* at 309. While Rhein need not identify a case that is directly on point, the existing precedent must be sufficiently applicable to place the constitutional question beyond debate such that every reasonable official would have understood that what he was doing violated that right. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

The need for closely analogous precedent is particularly acute here because the determination of the form and timing of the procedures that was due in this case turns on the balancing of multiple factors. "To determine whether due process is satisfied as to form and timing in a particular case," this Court applies the three-part balancing test articulated in *Mathews*, 424 U.S. 319. *Buttitta v. City of Chicago*, 9 F.3d 1198, 1206 (7th Cir. 1993). And "[b]ecause the *Mathews* test boils down to an ad hoc balancing inquiry, procedural due process requirements can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." *Shinault v. Hawks*, 782 F.3d 1053, 1059 (9th Cir. 2015) (internal citations and quotation marks omitted); *see also Crue v. Aiken*, 370 F.3d 668, 699 (7th Cir. 2004) (qualified immunity appropriate where resolution of underlying claim requires balancing test and there is no closely analogous case law); *Gustafson v. Jones*, 117 F.3d 1015, 1021 (7th Cir. 1997) (balancing tests "produce a wide gray area between the clearly legal and the clearly illegal, and the rules of qualified immunity require giving the benefit of the doubt to the reasonable public official if the particular case falls within that gray area").

Under the *Mathews* test, a court balances the private interest affected by the state

action, the degree to which more process will reduce the risk of a wrongful deprivation of that interest, and the government's interests, including the cost to the government of providing additional procedures. *Armstrong v. Daily*, 786 F.3d 529, 545 (7th Cir. 2015). In this case, a determination of the process that Rhein was due requires a balancing of his interest in possessing a FOID card, the risk of an erroneous deprivation of that interest absent a more expeditious review process, and the State's interests in protecting its citizens and in the costs of providing additional procedural safeguards.

Although Rhein has a clearly established right to keep and bear arms for lawful purposes, *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010), that right is not absolute and is subject to reasonable restrictions, *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Thus, the State Police may deny that right to those who present a danger of public injury. *See id.*; *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). Rhein argues that a faster review process would have reduced the risk that he was wrongfully deprived of his FOID card while the process was underway. AT Br. 24-25. But that concern must be balanced against the State's interest in ensuring that a person whose FOID card was revoked because he presented a clear and present danger has his eligibility for a FOID card restored only if doing so does not threaten public safety. *See Skoien*, 614 F.3d at 642 (preventing armed violence is an important governmental objective). Here, a faster review process could compromise the State's interest in protecting public safety if the State Police was forced to make a decision before it could collect evidence that might be necessary to make a full determination on

the merits.

Thus, Rhein cannot show that it is clearly established that, after a balancing of the *Mathews* factors, he had a due process right to obtain a decision or in-person hearing within six months, or even ten months, of his request to restore his FOID card rights, much less one on which all reasonable officials in Lieutenant Coffman's shoes would agree. And absent any closely analogous precedent, officials such as Lieutenant Coffman were not on notice that Rhein's request had to be processed more quickly.

Although Rhein cites to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), *Barry v. Barchi*, 443 U.S. 55 (1979), and *Tavarez v. O'Malley*, 826 F.2d 671 (7th Cir. 1987), in an attempt to demonstrate his clearly established right to a "prompt" hearing that was not "unreasonably prolonged" (AT Br. 33-34), those decisions do not define that generalized right in a particularized sense that is applicable to this case. As the Supreme Court has held, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Initially, all three cases cited by Rhein concerned a deprivation of the plaintiffs' livelihoods, a private interest that is not at issue here. *See Loudermill*, 470 U.S. at 535 (termination of plaintiff's job); *Barry*, 443 U.S. at 59 (suspension of plaintiff's horse training license); *Tavarez*, 826 F.2d at 673 (inability to enter and operate plaintiffs'

grocery store). Further, in *Loudermill*, 470 U.S. at 547, the Court held that a nine-month adjudication was not unconstitutionally lengthy *per se* and that a delay in the hearing could become a constitutional violation "at some point" without defining what that point would be. In *Barry*, the Court rejected a hearing process that served no effective purpose because it would not be completed until the underlying suspension had already been served. And in *Tavarez*, 826 F.2d at 674-75, this Court held that the defendants violated the plaintiffs' due process rights because they prevented the plaintiffs from entering their place of business, there was no reason a hearing could not have been held sooner, and the defendants had no authority to prevent entry into the building in the first place.

At best, those decisions establish that a defendant cannot prolong a review process for no reason at all. They do not, however, clearly establish that Rhein did not receive due process here. Although Rhein claims that Lieutenant Coffman prevented him from seeking review, ignored the documents he attached to his request, and did nothing to ensure that he received a "prompt" hearing, no reasonable jury could reach those conclusions. Rather, the revocation letter sent to Rhein merely encouraged him to submit all the documents listed in the letter and the Firearms Services Bureau initiated a document review after it received Rhein's request and ultimately restored Rhein's eligibility for a FOID card at the conclusion of that process even though he did not provide all the documents in the revocation letter. *Supra* pp. 13-15. And while Rhein did not receive an in-person hearing, he was not entitled to one where the document

review was sufficient to resolve his request. *Id.* The decisions cited by Rhein do not clearly establish what constitutes a "prompt" hearing that is not "unreasonably prolonged" in light of the circumstances of this case. Thus, not all reasonable officials in Lieutenant Coffman's shoes would conclude that he violated Rhein's right to due process by not granting relief or conducting an in-person hearing sooner.

Rhein alternatively argues that the Second Circuit's decision in *Spinelli*, 579 F.3d 160, clearly established that he had a right to a faster decision or an in-person hearing in this case because *Spinelli* considered the sufficiency of an administrative hearing following the suspension of a gun license. AT Br. 35-37. To defeat qualified immunity, a plaintiff must show that there is either "controlling authority" or a "robust consensus of cases of persuasive authority" demonstrating that the asserted right is clearly established. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (internal quotation marks and citations omitted). In the absence of controlling precedent from the Supreme Court or this Circuit, this Court will consider other relevant case law to determine "whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by controlling precedent was merely a question of time." *Abbott v. Sangamon County*, 705 F.3d 706, 731 (7th Cir. 2013) (internal quotation marks and citations omitted). *Spinelli*, a single case from another circuit, does not constitute a "robust consensus" of persuasive authority, particularly because the circumstances in that case differ from those that are present here in various important ways.

In *Spinelli*, 579 F.3d at 164, the plaintiff's gun dealer's license was suspended due to insufficient security at her gun shop. The Second Circuit held that the defendant's practice of denying a licensee notice or an opportunity to be heard after her license has been suspended until the police had completed an investigation that could take months or years violated due process. *Id.* at 171-75. The court found that the plaintiff had a private interest in operating her business and obtaining a livelihood and that the police investigation could not justify the lengthy deprivation of that interest, which could be financially devastating to the plaintiff. *Id.* at 171-73. The court also concluded that the ability of the plaintiff's attorney to limit the delay to 58 days by obtaining relief outside of the administrative review process did not cure the constitutional defect in the defendant's procedures. *Id.* at 174-75.

The *Spinelli* decision does not demonstrate that Rhein had a clearly established right to a decision or in-person hearing within six months of submitting his request to restore his eligibility for a FOID card for a number of reasons. First, as in *Loudermill*, *Barry*, and *Tavarez*, the private interests identified in *Spinelli* were the plaintiff's business and livelihood, which the Second Circuit later distinguished from an interest in a gun license, the deprivation of which "lacks some of the same urgency" of an action that is directly tied to a person's economic livelihood, *Kuck v. Danaher*, 600 F.3d 159, 164 (2d Cir. 2010). In addition, unlike the plaintiff in *Spinelli*, who could not participate in the process until after the investigation had ended and thus could obtain relief only by going outside of the existing administrative procedure, Rhein could and did present

information to the State Police.  R. 631-38.  Moreover, Rhein obtained the relief he was seeking through the existing document review process.  R. 654.  Thus, the *Spinelli* decision is not closely analogous to this case because it involved a deprivation of a different, more substantial, private interest, and it considered a review process that differed from the State Police's document review in important respects.  Therefore, the *Spinelli* decision did not create a "clear trend" in the case law, much less a "robust consensus," that Rhein had a due process right to a decision or in-person hearing within six months of requesting relief.

The precise timing and form of procedures that the government must provide hinge on the particulars of the situation, as due process is flexible, requiring different procedural protections depending on the situation at hand.  *Mathews*, 424 U.S. at 334; *Doe v. Heck*, 327 F.3d 492, 526-27 (7th Cir. 2003).  Because Rhein cannot identify closely analogous precedent or a robust consensus of persuasive authority clearly establishing that Lieutenant Coffman violated his right to due process in light of the circumstances present in this case, Rhein failed to show that Lieutenant Coffman was not entitled to qualified immunity on his claim that Lieutenant Coffman did not provide a "prompt" post-deprivation hearing or decision.

# CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

April 13, 2016

**LISA MADIGAN**
Attorney General
State of Illinois

**CAROLYN E. SHAPIRO**
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorneys for Defendant-Appellee.

s/ Frank H. Bieszczat
**FRANK H. BIESZCZAT**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2234
Fbieszczat@atg.state.il.us

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

     1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) because the brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), is no more than 30 pages from the Jurisdictional Statement through the Conclusion.

     2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Wordperfect X4 Ver. 14.0.0.755 in 12-point Century Schoolbook BT.

/s/ Frank H. Bieszczat
Frank H. Bieszczat

☐

# CERTIFICATE OF SERVICE
### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/_____

☐

# CERTIFICATE OF SERVICE
### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                    address:

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

s/_____