No. 15-2867

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

DAVID RHEIN,
Plaintiff-Appellant,

v.

LIEUTENANT JOHN COFFMAN,
Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
CASE NO. 13 C 843
THE HONORABLE GARY FEINERMAN, DISTRICT JUDGE

REPLY BRIEF OF PLAINTIFF-APPELLANT
DAVID RHEIN

Richard Dvorak
Dvorak Law Offices, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
Ph: (312) 593-7146
Fax: (312) 873-3869
*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Contents ...................................................................................................i

Table of Authorities ...............................................................................................ii

Argument ..............................................................................................................1

Conclusion ...........................................................................................................21

Certificate of Compliance with F.R.A.P. 32.......................................................22

Certificate of Service ...........................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Manzo,*

    380 U.S. 545 (1965)..................................................................... 6, 12


*Barry v. Barchi,*

    443 U.S. 55 (1979)..................................................................... 11


*Benson v. Allphin,*

    786 F.2d 268 (7th Cir. 1986) ...................................................... 15


*Brosseau v. Haugen,*

    543 U.S. 194 (2004) ...................................................................14


*D'Acuisito v. Washington,*

    640 F.Supp. 594 (N.D. Ill. 1986) ................................................6


*Ezell v. City of Chicago*

    651 F.3d 684 (7th Cir. 2011) ......................................................20


*Gracyalny v. Westinghouse Electric Corp.,*

    723 F.3d 1311 (7th Cir. 1983) .........................................................10


*Hope v. Pelzer,*

    536 U.S. 730 (2002) ...................................................................19

*Jones v. Hunt,*

    410 F.3d 1221 (10th Cir. 2005) ...............................................................14


*Kuck v. Danaher*

    600 F.3d 159 (2d Cir. 2010) ......................................................6, 11, 20, 21


*Michael C. v. Gresbach,*

    526 F.3d 1008 (7th Cir. 2007)............................................................14, 19


*Mishaga v. Monken,*

    753 F.Supp.2d 750 (C.D. Ill. 2010) ................................................ ...........20


*Melton v. City of Okla. City,*

    879 F.2d 706 (10th Cir. 1989).................................................................15


*Moore v. Madigan,*

    702 F.3d 933 (7th Cir. 2012) ...............................................................20


*Mullane v. Central Hanover Bank & Trust Co.,*

    339 U.S. 306(1950) ...........................................................................12


*Mullenix v. Luna,*

    136 S.Ct. 305, 308 (2015)...............................................................13, 14


*Patkus v. Sangamon-Cass Consortium,*

769 F.2d 1251 (7th Cir. 1985) ................................................................. 6

*Roth v. Veteran's Admin. of United States,*

856 F.2d 1401 (9th Cir. 1988) ........................................................... 15

*Schultz v. Baumgart,*

738 F.2d 231(7th Cir. 1984) .............................................................. 6

*Spinelli v. City of New York,*

579 F.3d 160 (2d Cir. 2009) ...........................................................7, 20, 21

*Tavarez v. O'Malley,*

826 F.2d 671 (7th Cir. 1987) .........................................................11, 12, 13

**OTHER AUTHORITIES**

20 Ill. Admin. Code § 1230.70...............................................................1, 2, 3, 6, 7

## ARGUMENT

**I. Defendant Coffman denied the Plaintiff his due process rights because, after he revoked the Plaintiff's gun license without a hearing, he then imposed arbitrary and onerous conditions as conditions-precedent to having the Plaintiff's license reinstated, then he ignored the submitted evidence, causing unnecessary delay, before the Plaintiff ultimately was forced to go to court to get his license reinstated, almost a year and a half after Coffman first summarily revoked the Plaintiff's license.**

Before addressing Defendant's argument, the Plaintiff believes it is necessary to correct and/or supplement Defendant Coffman's Statement of the Case, and thus provides the following additional information.

### Statutory and Regulatory Background (Def. Br. pp. 4-5)

Defendant Coffman asserts, "Once a cardholder has provided the State Police with written notice of his intent to seek relief, the State Police conducts an investigation and, if the Director wants more information, a fact-finding conference with the petitioner may be conducted." (Def. Br. 4-5). In support of this assertion, Defendant Coffman cites to 20 Ill. Admin. Code § 1230.70(b-c) (*Id.*). Subsection (b) addresses the appeals process for persons who are denied or revoked because of their commitment to a mental health facility, and subsection (c) addresses the appeals process for persons who are denied or revoked because of their status a convicted felon. However, the Plaintiff does not fall into either of these categories; rather, the Plaintiff's appeal falls under subsection (d)(5), *i.e.* "Other Denials or Revocation; Petition for Relief. . . Persons Revoked as a Clear and Present Danger. . . ." 20 Ill. Admin. Code § 1230.70(d)(5).

It is important to note this distinction because the type of documentation that "must" be provided by the revokee to the Department is different for each category. For those persons committed to a mental health facility, or those persons who are convicted felons, the documentation is specific, and tailored to those respective categories. 20 Ill. Admin. Code § 1230.70(b)(3)(A-D)(c)(3)(A-C). However, those persons revoked or denied because of allegedly being a "clear and present danger," the administrative code merely provides, "the petitioner must provide information refuting the finding that he or she presents a clear and present danger as defined by the Act." 20 Ill. Admin. Code § 1230.70(d)(5). The Department will begin investigating the circumstances surrounding the denial or revocation action "upon receiving complete documentation for the appeal," and "[t]he appeal process will not begin until the Department has received all the necessary documentation." 20 Ill. Admin. Code § 1230.70(d)(5)(e).

## Factual Background

Defendant Coffman asserts, "The legal department of the State Police determined the content of the letter, which was a standard letter that had been in place since before Lieutenant Coffman became chief of the Firearms Service Bureau." (Def. Br. 7). While this is true, it should be noted that Coffman has the authority to request changes to the content of the letter, and has, in the past, successfully sought changes to that letter when he felt there were deficiencies (R. 922-23).

Coffman asserts that on August 8, 2011, he received a letter from the

Plaintiff's attorney, which requested reinstatement and also included a letter from a psychologist and three character letters (R. 631-38), and that, as a result of receiving this letter, "The Firearms Services Bureau then initiated a document review by placing the documents in Rhein's file, sending information requests to Representative DeLuca's office and the State Police zone office from which the revocation request had originated, and waiting for their responses." (Def. Br. 8). Defendant Coffman cites to 20 Ill. Admin. Code § 1230.70(c) for this assertion, which had no application to "clear and present danger" cases, as well as "R. 1021-25." However, neither Coffman nor anyone in his unit ever "initiated a document review" between August 8, 2011 and February 1, 2012, the date of his transfer, because Coffman admits that neither he nor anyone in his department actually reviewed the submitted documents (R. 1021-24). Defendant Coffman blames his failure to review the submitted documents on staff members with Representative DeLuca's office, due to their alleged lack of cooperation with his request for information (R. 1024-25), however, ultimately Defendant Coffman admitted that any contact the Plaintiff had with DeLuca's office after his revocation would not have factored into any decision whether to give the Plaintiff a hearing because "that's precisely the kinds of things that would have – should be discussed at a hearing." (R. 1036-37).

      This argument is also based on a factual distortion of the record. Defendant Coffman claims, "at some point, Lieutenant Coffman was informed that Rhein had again contacted Representative DeLuca's office a few months after his FOID card

was revoked, blaming Representative DeLuca for the revocation." (Def. Br. 8). However, it is important to note that Coffman was notified of this contact via an email on May 23, 2011 (R. 1032-1037), and thus this was something that occurred several months before the Plaintiff first requested relief in writing on August 8, 2011. Moreover, the Plaintiff's file indicates nobody from Coffman's office even attempted to reach out to anyone from DeLuca's Office until May 18, 2012, a fact pointed out in the Plaintiff's Rule 56.1 response to Defendant Coffman's statement of material facts (R. 650; 1119-1120).

Finally, Coffman correctly states that the Plaintiff's mistakenly asserted that the circuit court ordered that the Plaintiff's gun license be reinstated (Def. Br. 9, n. 3). While the Plaintiff was not correct in making this assertion, it must also be remembered that the Plaintiff's FOID card privileges were reinstated only after the Plaintiff's attorneys sent two letters to Defendant Coffman and one to the Illinois State Police Director, none of which resulted in a document review or hearing, prompting the Plaintiff's attorney to file a lawsuit in the Circuit Court of Cook County on April 27, 2012 (R. 1058-1061). On August 2, 2012, an agreed order between the parties dismissing the lawsuit was entered after the Illinois State Police agreed to reinstate the Plaintiff's FOID card privileges on June 5, 2012 (R. 485). Given the fact that the Illinois State Police did not even begin to investigate the matter after receiving the Plaintiff's first three letters (R. 650), but only after the Plaintiff filed his lawsuit, the lawsuit clearly prompted the reinstatement, regardless of whether the court actually ordered the Plaintiff's privileges reinstated.

A. Defendant Coffman is responsible for the failure to give the Plaintiff a "prompt" and meaningful post-deprivation hearing from February 3, 2011, the date of revocation, to August 8, 2011, when Coffman received a letter the Plaintiff's attorney wrote to Coffman asking for reinstatement, and giving him the materials that Defendant Coffman requested from him in a letter written on the date of the revocation.

Defendant Coffman is responsible for the delay caused as a result of his revoking the Plaintiff's gun license without a hearing on February 3, 2011, and thereafter sending a letter to the Plaintiff that essentially placed the burden on the Plaintiff to conduct his own investigation into the matter before the appeals process could begin. Defendant Coffman asserts on appeal that he imposed no conditions on the Plaintiff for him to request a document review (Def. Br. 13). While the letter may not have used the word "must" or directly indicated the submission of documents was required before a document review could begin, any reasonable reader of that letter would take the language as indicating that the documents must be submitted for there to be any serious consideration of the matter. For example, nowhere in the letter does it tell the Plaintiff that he can appeal the denial immediately, and instead the letter states, "In order to enable an effective evaluation, those seeking this review are strongly encouraged to provide this office with the following documents: . . . " (R. 578). Defendant Coffman certainly took the conditions set forth in his letter as mandatory before he would begin any document review. Defendant Coffman explained:

> What was requested would hopefully be received at once by the person petitioning. And once that's received, the process could begin. It wouldn't necessarily begin immediately once that's received because we were backlogged in just about every area within the bureau for the

five years and years before I got there because of a lack of manpower[1] (R. 925-26).

Defendant Coffman's explanation is consistent with the administrative appeals code, which requires that a petitioner who chooses to appeal a revocation "must provide information refuting the finding that he or she presents a clear and present danger as defined by the Act," and indicates that "[t]he appeal process will not begin until the Department has received all the necessary documentation." 20 Ill. Admin. Code § 1230.70(d)(5)(e).

Conditioning a post-deprivation hearing on the person whose property was taken by the government is problematic for Coffman because it was *his burden* to provide a "prompt" and "meaningful" post-deprivation hearing to the Plaintiff after he summarily revoked the Plaintiff's FOID card without a pre-deprivation hearing, and, moreover, state actors cannot "impose[ ] unnecessary burdens on the person facing a deprivation." *D'Acquito v. Washington*, 640 F.Supp. 594, 617 (N.D. Ill. 1986) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1265 (7th Cir. 1985); and *Schultz v. Baumgart*, 738 F.2d 231, 235 (7th Cir. 1984)). The relevant provisions of the FOID Card Act and Illinois' Administrative Code are silent as to any specific documentation that is required to appeal a "clear and present danger" revocation, but the Administrative Code is clear that some sort of "information" is required to begin the appeals process, and that whatever documents are deemed "necessary" by the Department

---

[1] Of course, a large caseload or backlog of other petitions is no excuse for delay, absent an indication that delay "is required to gather evidence, perform additional investigation, or formally consider an appeal." *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010). Where, as here, "the appeal sits gathering dust for nearly all the interim period, awaiting the scheduled hearing date," the delay is inexcusable. *Id.*

must be submitted before the appeals process can even begin. 20 Ill. Admin. Code § 1230.70(d)(5)(e). This is virtually indistinguishable from a process that the Second Circuit condemned in *Spinelli v. City of New York*, 579 F.3d 160, 173 (2d Cir. 2009), wherein the Second Circuit held the City's "blanket policy of providing a hearing after an investigation is completed cannot be squared with due process."

Moreover, Coffman cannot escape liability merely because he did not originally draft the form letter[2] explaining what sort of documentation is "strongly encouraged" to be submitted in seeking a document review (Def. Br. 13). In fact, Coffman admitted in his deposition that had the authority to request changes to the content of the letter, and had, in the past, successfully sought changes to that letter when he felt there were deficiencies (R. 922-23). Coffman made the decision to revoke the Plaintiff's gun license, he had the burden of providing a prompt and meaningful post-deprivation hearing, and he was the person who was in charge of the unit that conducts document-review appeals and facilitates hearings challenging such decisions. It is simply absurd to argue that Coffman did not have the personal involvement necessary to be liable in a Section 1983, given the above.

> B. Defendant Coffman essentially concedes he did not provide the Plaintiff with a prompt and meaningful post-deprivation hearing from August 8, 2011, when Coffman received a letter from the Plaintiff's attorney asking Coffman for reinstatement, and February 1, 2012, when Coffman transferred to another division.

Defendant Coffman does not even attempt to claim that he did not have the requisite personal involvement in this due-process matter from August 8, 2011,

---

[2] Coffman cites no authority to support his contention that he should not be personally responsible for his actions in sending out a form letter, to which he signed and adopted as his own.

when he received the letter from the Plaintiff's attorney, up to the date he transferred out his division on February 1, 2012, a period of almost six months (Def. Br. 13-15). Coffman notes that not all cases require an in-person hearing to satisfy due process (Def. Br. 14), a proposition with which the Plaintiff agrees. However, Coffman gives no valid explanation as to why he did absolutely nothing in this case to initiate, at the very least, a "document review" of the Plaintiff's appeal after receiving that August 8, 2011 letter. Coffman contends, "Here, the Firearms Services Bureau initiated a document review process after it received Rhein's letter on August 8, 2011, by placing the letter and the accompanying documents in his file and asking for information from Representative DeLuca's office and the State Police zone office that requested the revocation (Def. Br. 14). In support of this factual assertion, Coffman cites to "R. 1021,[3]" and the Illinois Administrative Code. This assertion is based on a misstatement of the record.

In fact, neither Coffman nor anyone in his unit ever "initiated a document review" during Coffman's tenure as head of the gun-licensing unit since Coffman admits that neither he nor anyone in his unit actually reviewed the submitted documents (R. 1023-24). Moreover, even though Coffman indicates "the Firearms

---

[3] On this page, Coffman explained, in general, once the necessary documents were received, "requests to DeLuca's office would go out and requests to the zone would go out. Information – we would then wait for information to come back. I do remember receiving information back that indicated there was still some issue." (R. 1021). Later, Coffman claimed he normally only looks at the submitted documents after a request to the zone and DeLuca's office would go out, but that he did not believe "at this time" that he received anything back from the zones or from DeLuca's office (R. 1024). However, no documents exist in the Plaintiff's file that reflect any contact between Coffman's unit and either the zone or DeLuca's office between May of 2011 and May of 2012 (R. 639-655). Coffman explained that any contacts (such as with the Plaintiff's lawyer) should be documented in the Plaintiff's file if, in fact, they occurred (R. 1028).

Services Bureau" sought information from Representative DeLuca's office and the State Police zone that had requested the revocation, the Plaintiff's file indicates that, since the Plaintiff first requested reinstatement on August 8, 2911, nobody from Coffman's office even attempted to conduct such an outreach until May of 2012 (R. 646-654). In any event, this whole discussion is a red herring, since Coffman admitted in his deposition that any contact the Plaintiff had with DeLuca's office after his revocation would not have factored into any decision whether to give the Plaintiff a hearing because "that's precisely the kinds of things that would have – should be discussed at a hearing." (R. 1036-37). Moreover, waiting for more information from those sources does not answer the question why Coffman did not bother to read the information that he, himself, requested be submitted to him in his February 3, 2011 letter. It would have taken all of 10 minutes to read this information[4], so a lack of "manpower" is no excuse (R. 925-26). Having put the burden on the Plaintiff to do his own investigation, rather than on the State to provide a "prompt" and "meaningful" post-deprivation hearing, Defendant Coffman now puts the onus on third-parties to submit evidence before doing his required "document review," which, one would think, would require actually reviewing the documents that he, himself, "strong encouraged" the Plaintiff to present to him.

      C. Defendant Coffman is responsible for the actions that occurred after February 1, 2012, when he transferred to another division.

Defendant Coffman takes no issue with the proposition that the Plaintiff need only prove his actions were at least one of the proximate causes of the

---

[4] The submitted materials consisted of a letter written by the Plaintiff's attorney, Dr. Child's report, and three character-reference letters, which totaled eight pages (R. 631-638).

Plaintiff's delay in obtaining relief (Def. Br. 15), but implies that Coffman cannot be responsible for the four-month delay that occurred after February 1, 2012 because his actions (or inactions) were not the "cause-in-fact" of that delay (Def. Br. 16). Arguing a defendant is not the "cause-in-fact" of an injury is another way of claiming that there was a "superseding cause" of the injury. *Gracyalny v. Westinghouse Electric Corp.*, 723 F.3d 1311, 1322 (7th Cir. 1983). However, a defendant can escape liability on such a theory only where it can be shown that his action is "too remote from the injury to impose liability." *Id.* This, in turn, comes back to the issue of whether the defendant's acts or omissions are unforeseeable. *Id.*

Coffman's inaction on the matter was both the cause-in-fact and the proximate cause of the delay that occurred after February 1, 2012 because it was certainly foreseeable that further delay would occur after he transferred divisions, due to his inaction in the months before he transferred out of that division. To demonstrate this point, the Plaintiff gives this Court an analogy. Suppose a worker at the Department of Motor Vehicles charged with processing motorists' paperwork begins work at 9 a.m., hangs an "open" sign on his window, a line begins to form, and then he immediately goes on a coffee break, letting the line build up. An hour later, that same worker quits his job, leaving it up to a replacement worker to deal with the long line ahead of her. Can it really be said that the first worker bears no responsibility for causing the delays in processing motorists' paperwork that occurred after 10 a.m.? Just as one cannot blame the second worker in the

aforementioned hypothetical for the malfeasance of the first, so too Coffman cannot escape liability here by blaming his replacement.

Before turning to the qualified immunity question, though, the Plaintiff needs to reiterate that, even if this Court finds that Coffman is only responsible for his acts and omissions that occurred from August 8, 2011 to February 1, 2012, Coffman is still liable to the Plaintiff for violating his due process rights. Six months is still a substantial delay, even framed purely as a question of time. *Barry v. Barchi*, 443 U.S. 55, 66 (1979) (15-day delay in giving the plaintiff a hearing regarding his horse-training license was not a "prompt" hearing within the meaning of the Due Process Clause); *Tavarez v. O'Malley*, 826 F.2d 671, 674 (7th Cir. 1987) (one-month delay in obtaining post-deprivation review of decision to close down store also a due process violation). Moreover, this six-month period of time is significant in light of the fact that there was no reason whatsoever that would have justified the delay, but instead the Plaintiff's submitted materials sat in his file "gathering dust." *Kuck*, supra, 600 F.3d at 166 (the delay in processing a gun-licensing application was inexcusable because "the appeal sits gathering dust for nearly all the interim period, awaiting the scheduled hearing date."); *Tavarez*, supra, 826 F.2d at 674 (due process violation occurred where the one-month delay resulted from "inexplicable bureaucratic delays."). To summarize, this Court should find Coffman had the personal responsibility requisite for Section 1983 liability for his actions and inactions that occurred from February 3, 2011 (when Coffman revoked the Plaintiff's gun license without a hearing) to June 4, 2012 (when the

11

Illinois State Police re-instated the Plaintiff's gun license), a period of approximately 16 months. However, even a six-month delay violates due process, given the fact that Coffman can point to no reasonable justification for even this significant amount of delay.

## II. The district court erred[5] in granting Defendant Coffman qualified immunity.

Defendant Coffman's qualified-immunity argument should be easily rejected since it is premised on the notion that this Court should not even analyze the facts of this particular case in the context of the constitutional issue before this Court. Coffman admits that in 2011 and 2012 the Plaintiff had a clearly established right to due process, and more specifically that he had a right to be heard " 'at a meaningful time and in a meaningful manner.' " (Def. Br. 17) (quoting *Armstrong v. Manzo*, 380 U.S. 454, 552 (1965)). He also never takes issue with the well-established principle that any post-deprivation hearing must be "prompt," and not "unreasonably prolonged," conceding these are, at a minimum, generally established constitutional rights (Def. Br. 18). Finally, Coffman never takes issue with this Court's decision in *Tavarez*, supra, wherein this Court found a due process claim in the wake of the officials' "inexplicable bureaucratic delays" and the

---

[5] Significantly, other than noting the court did not abuse its discretion in skipping over the first step of the *Saucier* test (Def. Br. 18), something the Plaintiff criticized as a matter of policy, not as a basis for reversal (Pl. Br. 28-29), Defendant Coffman does not cite to the district court's opinion once in his Argument section (Def. Br. 12-25), even though the district court ruled in his favor on the qualified-immunity question. This silence speaks volumes, since the district court's opinion, which focused solely on the timing issue and ignored the process issue, cannot be defended, for the reasons the Plaintiff set forth in his opening brief (Pl. Br. 18-21). Coffman never takes issue with the Plaintiff's argument in this regard, and thus it must be assumed he agrees with the Plaintiff's point.

"unnecessary burdens [imposed] on" the plaintiff. *Id.* at 674.

Nevertheless, Coffman argues these well-established due process principles are at a "high rate of generality," and thus insufficient case law the Plaintiff can rely upon to defeat his affirmative defense of qualified immunity (Def. Br. 18) (citing to *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)). *Mullenix* is inapposite. In *Mullenix*, the Court criticized the Fifth Circuit's framing of the qualified immunity issue as whether it was well-established that an officer may not "use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others" as imposing too general a principle of law." *Id.* at 308-09. The Court rejected this framing of the issue because, it pointed out, each case must be decided on its particular facts, in its own particular context, and, in fact, the Court pointed to several high-speed chase cases with similar factual scenarios that did not amount to excessive force. *Id.* at 309.

Unlike in *Mullenix*, Coffman has not pointed to one case[6] throughout this litigation with even remotely similar conduct wherein a court held there was no due process violation or that qualified immunity should be granted. This is important because *Mullenix* stressed, where the constitutional principles are general in nature, the dispositive question is "whether the violative nature of *particular* conduct is clearly established," and that "[t]his inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Id.* at 308

---

[6] The Plaintiff understands it is his burden to establish the constitutional right at issue was well-established at the time of the constitutional deprivation, however, pointing to cases wherein similar conduct was held to not violate due process or that amounted to qualified immunity would go a long way toward refuting the Plaintiff's claim that the constitutional principle was not well-established, as the defendants did in *Mullenix*.

(emphasis in original) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curium)).  This holding is consistent with this Court's explanation that "a general constitutional rule already identified may apply with obvious clarity to the specific conduct in question, even though the very action in question has not been held unlawful." *Michael C. v. Gresbach*, 526 F.3d 1008, 1017 (7th Cir. 2007).  Put another way, "officials committing outrageous, yet sui generis, constitutional violations ought not to shield their behavior behind qualified immunity simply because another official has not previously had the audacity to commit a similar transgression." *Jones v. Hunt*, 410 F.3d 1221 (10th Cir. 2005) (citied with approval by *Michael C.*, 526 F.3d at 1017).

If anyone is guilty of resorting to broad generalizations, it is Defendant Coffman, not the Plaintiff.  In addressing his qualified immunity defense, Coffman never once argues his "particular conduct" in the "specific context of the case" even arguably complied with due process principles.  The Plaintiff has emphasized throughout this litigation that asking for specific documentation, where nothing specific is required by statute, then ignoring that submitted evidence once received, and simply ignoring the multiple pleas of the Plaintiff's attorney for some sort of due-process review, causing undue and significant delay, cannot possibly comport with due process principles, especially where the delay caused the Plaintiff to lose a fundamental constitutional right.  It is the Plaintiff, not Defendant Coffman, who addresses the facts of this case, as well as its factual context, the real crux of the qualified immunity question, as stressed by the Court in *Mullenix*.

Again relying on general principles of law, Coffman next argues that his qualified-immunity defense cannot be defeated merely because due process cases require courts to employ a balancing test (Def. Br. 19). Coffman concedes that qualified immunity is not a valid defense in every case where a balancing test is required, only that it is "particularly acute" in such instances (Def. Br. 19). In his brief, the Plaintiff points out the Ninth and Tenth Circuits have cautioned against reading this general principle of law too broadly because doing so would "effectively eviscerate" a litigant's ability to bring Section 1983 challenges (Pl. Br. 31) (quoting *Roth v. Veteran's Admin. of United States*, 856 F.2d 1401, 1408 (9th Cir. 1988); and citing *Melton v. City of Okla. City*, 879 F.2d 706, 729 (10th Cir. 1989)). Coffman takes no issue with this sage advice, but then does exactly that.

Coffman also takes no issue with this Court's warning in *Benson v. Allphin*, 786 F.2d 268, 276 n. 18 (7th Cir. 1986) that "[t]here may, of course, be a situation where the defendant's actions are so egregious that the result of the balancing test will be a foregone conclusion." This is one of those cases. In fact, neither the district court[7] nor Defendant Coffman[8] carefully employed the three-part *Mathews* balancing test. Doing so, it seems, would result in the "foregone conclusion" that the Plaintiff's due process rights were egregiously violated.

As explained in the Plaintiff's opening brief, all three factors clearly point to a

---

[7] The district court employed the three-part *Mathews* test in the context of the Plaintiff's lack of pre-deprivation hearing, but not as to his lack of post-deprivation review, the issue on appeal.

[8] Coffman gives lip service to employing the three-part *Mathews* test, but then gives a cursory analysis of the issue (Def. Br. 20-21). Compare this to the Plaintiff's analysis of the issue (Pl. Br. 21-27).

due process violation (Pl. Br. 21-27).  The Plaintiff contends his interest in self-defense is strong, as it involves a fundamental right (Pl. Br. 21-22), and Coffman concedes this is true, only arguing it is not absolute and subject to reasonable restrictions (Def. Br. 20), an issue that is beside the point in determining the sole issue of the importance of the private interest at stake.  Every fundamental right is subject to some sort of restriction, whether it be free speech, religious freedom, the right to privacy, or the right to be free from unreasonable searches and seizures. Yet, that does not make the fundamental right any less important.

Regarding the second *Mathews* factor (the risk of erroneous deprivation of property), in response to the Plaintiff's argument (Pl. Br. 24-26), Coffman merely restates (but unduly constrains) the Plaintiff's position that "a faster review process would have reduced the risk that he was wrongfully deprived of his FOID card while the process was underway," (Def. Br. 20), without ever arguing why this second factor, like the first, should not weigh in the Plaintiff's favor.  Instead, Coffman merely states this second factor should be "balanced against the State's interest in ensuring that a person whose FOID card was revoked because he presented a clear and present danger has his eligibility for a FOID card restored only if doing so does not threaten public safety."  (Def. Br. 20).

Briefly addressing the third *Mathews* factor, Coffman argues "a faster review process could compromise the State's interest in protecting public safety if the State Police was forced to make a decision before it could collect evidence that might be necessary to make a full determination on the merits."  (Def. Br. 21).  First, it must

be remembered that the Plaintiff is not complaining merely about a slow review process; incompetence and unfairness is also part of the claim. Second, reviewing the Plaintiff's submitted paperwork that Coffman himself "strongly encouraged" be submitted would have taken about 10 minutes, and little effort is required to simply reach out to the police in the submitting zone and/or Representative DeLuca's office.

Finally, the facts of this case undermine any notion that delay was necessary to give time for state officials to properly consider the Plaintiff's request for revocation. On August 8, 2011, Coffman received the Plaintiff's first letter to Coffman requesting reinstatement, along with the paperwork and reports that Coffman "strongly encouraged" him to send in his earlier February 3, 2011 letter (R. 634). Getting no response, the Plaintiff's attorney sent another letter to Coffman on September 19, 2011, which was received by Coffman on September 23, 2011 (R. 640). Fed up, the Plaintiff's attorney then sent another letter on January 16, 2012, received on January 19, 2012, this time directed to Illinois State Police Director Hiram Grau, complaining of Coffman's inaction, and this time requesting a "hearing," rather than just reinstatement (R. 642-43). This letter was sent down the chain of command to Coffman, who then noted in the Plaintiff's file on January 25, 2012, "M/Sgt. Willner, Please make formal contact with the attorney and advise legal. Also, let Lt. Outlaw know when this occurred and provide a status." (R. 643) (R. 1030). Still having been provided no response to his request for a hearing (R. 1060, ¶9), on April 27, 2012, the Plaintiff's attorney filed a verified complaint in the Circuit Court of Cook County, requesting reinstatement of the Plaintiff's license (R.

1058-61). It was not until May 11, 2012 that anyone at the Illinois State Police was asked to reach out to DeLuca's office (R. 648). This occurred via email from Sgt. John Thompson to Donna Fanning on May 18, 2012, at 7:53 a.m., requesting an update as to whether the Plaintiff has made any contact with DeLuca's office since the revocation on February 3, 2011, and whether he demonstrated any "continued aggressive behavior." (R. 650). On May 18, 2012, at 10:59 a.m., (about two hours later), Fanning wrote back to Sgt. Thompson, indicating the last contact her office had directly with the Plaintiff was on February 18, 2011, when the Plaintiff told Fanning to give Representative DeLuca a message: "Tell that little candy-ass that [he] had my guns taken away illegally [and] that I am going to make sure he doesn't get re-elected. And I am going to make sure everybody knows what a little candy-ass he is." (R. 649) (R. 1119-1120). On June 4, 2012, without a hearing, the Illinois State Police reinstated the Plaintiff's FOID card (R. 655).

This evidence demonstrates that neither Coffman nor any other law enforcement official did any work on the Plaintiff's request for reinstatement while Coffman was in charge of the gun-licensing unit, even after receiving three written letters requesting a document review (and later, a hearing) of the Plaintiff's case. The investigation did not begin until after the Plaintiff filed a lawsuit, and this investigation consisted of an email exchange between an Illinois State Police Official and Donna Fanning, a task that was completed in about two hours. Other than an eleventh-hour request that the Plaintiff's attorney be contacted about his request for a hearing (only after the Plaintiff went over Coffman's head), Coffman

took no actions in the six months from when he first received the Plaintiff's written request for reinstatement and when he transferred out of his division. The tasks that would have required him to complete a review of the documents would have been for Coffman to review the submitted paperwork, and to reach out to the zone officers and DeLuca's office, tasks that could have been completed in a matter of a few hours. This Court should reject Coffman's claim that the State has a strong interest in delaying the review of gun-license reinstatement hearings based on any need for a careful, thorough investigation when the record in this case so clearly undercuts this unsupported claim.

Given this record, it is significant that Coffman admits that the cases cited by the Plaintiff in his opening brief, "At best . . . establish that a defendant cannot prolong a review process for no reason at all." (Def. Br. 22). Yet, that is exactly what Coffman's excuse boils down to in this case: no reason at all. Coffman can point to nothing in the record where he actually lifted a finger to do anything in this case from August 8, 2012, when he first received the letter, and January 25, 2012, when he asked a colleague to make contact with the Plaintiff's attorney, only after that attorney went over Coffman's head in an attempt to get some sort of response to his repeated requests for legal relief.

This case falls squarely within the well-established line of cases holding that qualified immunity is not allowed where a state official's unconstitutional actions are "obvious." *Michael C.*, supra, 526 F.3d at 1017 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Coffman was on fair notice that, as the head of a governmental

department that reviews appeals of the government's revocation of gun-licensing permits, he could not simply ignore evidence that he requested be submitted to him, and then do nothing for several months to do any investigation into the appeal, especially where the attorney sent him repeated letters requesting some sort of response or action. Thus, there is no need for the Plaintiff to go out of Circuit to point to other gun-licensing cases, since the due process case law from this Circuit and the United States Supreme Court put Defendant Coffman on "fair notice" that his actions (or inactions) did not comport with due process principles.

Thus, pointing to other gun-licensing cases has been, and continues to be, the Plaintiff's fallback position, albeit a meritorious one. Coffman admits that a plaintiff can point to case law from other circuits to defeat a qualified immunity case, so long as there is a "clear trend" in the case law that would demonstrate a "robust consensus" on the issue (Def. Br. 23). The Plaintiff agrees, and this is exactly what was developing in this Circuit in decisions that increasingly gave teeth to the Second Amendment. See, e.g., *Mishaga v. Monken*, 753 F.Supp.2d 750 (C.D. Ill. 2010) (per *Heller* and *McDonald*, an individual has the right to possess a handgun as a guest in a home); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (gun-training ordinances held to violate the Second Amendment); and *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (expanding *McDonald* to include the right to carry a handgun for self-defense outside of the home). Moreover, two decisions from the Second Circuit; *Spinelli v. City of New York*, 579 F.2d 231 (2d Cir. 2009) and *Kuck v. Danaher*, 600 F.3d 159 (2d Cir. 2010) (Pl. Br. 35-37), the most closely

analogous case in the country regarding Section 1983 claims made in the factual context of gun-licensing denials, both of which were decided for the plaintiff, and both of which were decided before McDonald, also shows this "clear trend." While *Spinelli* involved the plaintiff's livelihood, *Kuck*, like the case at bar, did not. In sum, it was clearly established in 2011 that Defendant Coffman's acts and omissions were unconstitutional as to defeat his qualified immunity claim.

## CONCLUSION

For the foregoing reasons, Plaintiff-appellant David Rhein respectfully requests that this Court reverse the district court's decision granting Defendant-Appellee Coffman's motion for summary judgment and denying his, and instead enter summary judgment in favor of the Plaintiff, and against Defendant Coffman.

Respectfully Submitted,

s/Richard Dvorak

_____

Richard Dvorak, attorney for
Plaintiff-Appellant David Rhein

Richard Dvorak
Adrian Bleifuss Prados
Dvorak Law Offices, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
Ph: (312) 593-7146
Fax: (312) 873-3869

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)(7)

The undersigned, counsel of record for the Plaintiffs-Appellants, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7)(B)(ii):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. 32(a)(7)(B)(ii) for a brief produced with a proportionately spaced font. The length of this brief is 6,511 words.

Respectfully Submitted,

s/Richard Dvorak

_____
Richard Dvorak, attorney for
Plaintiff-Appellant David Rhein

Richard Dvorak
Dvorak Law Offices, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
Ph: (312) 593-7146
Fax: (312) 873-3869

## CERTIFICATE OF SERVICE

The undersigned, counsel for the Plaintiff-Appellant, hereby certifies that on April 25, 2016 copies of Plaintiff-Appellant's Reply Brief were served upon counsel of record via the Court's electronic filing system; the undersigned further certifies that all participants in the case are represented by registered CM/ECF users.

Respectfully Submitted,

s/Richard Dvorak

_____
Richard Dvorak, attorney for
Plaintiff-Appellant David Rhein

Richard Dvorak
Dvorak Law Offices, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
Ph: (312) 593-7146
Fax: (312) 873-3869