In the
# United States Court of Appeals
For the Seventh Circuit

No. 15-2867

DAVID RHEIN,

              *Plaintiff-Appellant*,

v.

JOHN COFFMAN,

              *Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 843 — **Gary Feinerman**, *Judge*.

ARGUED MAY 31, 2016 — DECIDED JUNE 17, 2016

Before EASTERBROOK and WILLIAMS, *Circuit Judges*, and YANDLE, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. David Rhein began calling and sending packets of papers to the office of Anthony DeLuca, a member of Illinois's House of Representatives. The packets accused DeLuca of violating the constitutions of

---

[*] Of the Southern District of Illinois, sitting by designation.

the United States and Illinois and threatened violence unless DeLuca changed his ways. One document asserted, among other things: "Now you know why so many of you people or going to be shot because your too selfish too understand the truth." (Errors in original.) Two pages included hand-drawn crosshairs. Rhein visited DeLuca's local office and, in the course of what the manager described as an hour-long rant, said that he was "ready to start shooting people."

DeLuca's staff reported these events to the Illinois State Police. Lieutenant John Coffman, then the Chief of its Bureau of Firearms Services, discovered that Rhein was licensed to own firearms and had some registered in his name. Illinois calls the license a Firearm Owners Identification Card or FOID Card; we call it a Card. State law permits summary revocation of a Card, with hearing to follow, if officials conclude that the licensee's "mental condition is of such a nature that it poses a clear and present danger to … any other person". 430 ILCS 65/8(f). Coffman concluded that Rhein's statements meet this standard and on February 3, 2011, summarily revoked Rhein's Card. Police called at his house the next day and removed his weapons.

Coffman sent Rhein a letter explaining what had happened. The letter told Rhein that he could apply to have the Card reinstated, and local police told Rhein that his firearms would be returned if the Card were reinstated. Coffman's letter "strongly encouraged" Rhein to include three character references plus a report from a psychologist certifying that he is mentally fit to possess guns.

Six months later (on August 1, 2011) Rhein's lawyer sent Coffman a letter requesting the Card's reinstatement. Counsel included three character references plus a psychologist's

report concluding, in essence, that Rhein is all bark and no bite. The regulations in force in 2011 and 2012 committed the reinstatement decision to the Director of the State Police (Hiram Grau at the time) rather than to Coffman or any other subordinate, 20 Ill. Admin. Code §1230.70(c), but counsel did not send his request to the Director. (Throughout this opinion we cite the 2003 version of the regulations. The 2013 amendments do not affect this litigation.)

The regulations provided that the Director may convene a conference (at which the applicant may be represented by counsel) and grant or deny relief without a hearing, and that if the Director does not reinstate the Card the affected person may request a formal hearing. *Id*. at §1230.70(c) to (f). Rhein's lawyer did not request such a conference. But on January 16, 2012, counsel sent a letter addressed to Grau asking for a hearing. Coffman promptly sent the file to the agency's legal department, and his superior (Colonel Patrick Keen) attached a memorandum detailing the reason for the summary revocation and the status of the investigation on Rhein's request for reinstatement. Coffman left the Bureau of Firearms Services a month later and had nothing more to do with Rhein's situation. On June 5, 2012, Director Grau reinstated Rhein's Card without convening a hearing, and the firearms were returned on August 29, 2012.

Rhein then sued Coffman under 42 U.S.C. §1983, contending that he had violated the Second Amendment and the Due Process Clause of the Fourteenth Amendment by revoking the Card without a hearing and taking more than a year to restore the guns. The district court granted summary judgment in Coffman's favor. 118 F. Supp. 3d 1093 (N.D. Ill. 2015). First it held that summary revocation, with hearing to

follow, is proper when delay poses unacceptable risks. *Id*. at 1099–1103. Then it held that Coffman is entitled to qualified immunity on the delay-in-restoration theory, because courts have yet to determine how quickly governmental bodies must act when the right to keep firearms is at stake. *Id*. at 1103–06. On appeal Rhein abandons the argument that a hearing had to precede the revocation. He now contends only that the Constitution required Coffman to return his guns more quickly.

Our description of the regulations reveals the principal problem with this argument: The Director of the State Police, not the Chief of the Bureau of Firearms Services, is responsible for deciding whether to restore a Card (and, if necessary, whether and when to hold a hearing). Indeed, Coffman was barred from holding a hearing; he had acted as the prosecutor by revoking Rhein's Card and could not have served as the judge of his own actions. See, e.g., *Morrissey v. Brewer*, 408 U.S. 471 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). Coffman need not depend on a defense of immunity when he is not the person responsible in the first place. The Constitution does not create vicarious liability, so Coffman cannot be liable for delay by other parts of the State Police. See, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662, 675–77 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203–05 (7th Cir. 2012) (en banc).

Coffman's liability, if any, depends exclusively on his own decisions and actions. Rhein might have contended that the Constitution required Coffman to alert him to the provisions of 20 Ill. Admin. Code §1230.70, notwithstanding the norm that publication of a law or regulation is all the notice a government need supply. Some decisions, such as *Wolff v. McDonnell*, 418 U.S. 539, 563–65 (1974), hold that govern-

mental bodies must notify persons of their right to a hearing and how to go about asserting that right. But Rhein does not make an argument along these lines (his counsel expressly disclaimed it at oral argument), and it would be weak coming from a person represented by counsel in the administrative process. Rhein's lawyer could have found §1230.70 and used the procedures it affords.

Another possibility is that Coffman prevented the Director from acting once Rhein made a request. Yet Rhein does not contend that Coffman delayed in transmitting the file once he received the letter of January 2012. Rhein hints that Coffman took too long to investigate after counsel's letter of August 2011, but he did not develop in discovery just what Coffman was doing from August through December 2011—and the letter of August 2011 had not asked for an expedited investigation. Section 1230.70 shows that Rhein had a right to bypass Coffman, and, when Rhein exercised that right in January 2012, Coffman promptly stepped aside. Coffman cannot be required to pay damages for investigating in order to be able to make a recommendation when, at last, Rhein asked for a decision from the Director.

Rhein's principal theory is that Coffman is liable for demanding information that would take so long to assemble that the constitutional limit for a timely decision would have passed before it could be produced. Coffman's letter recommended that Rhein submit three character references and a psychologist's report. A reputable psychologist or psychiatrist will want to gather information and observe a person repeatedly before offering an opinion, so obtaining such a report inevitably entails delay.

Now a recommendation, even an emphatic one, is not a command. Rhein was free to ask the Director for an immediate hearing. Coffman's letter did not block that path. But Rhein did not take it. Having repeatedly threatened a state legislator with violence, Rhein surely understood that he was not going to get his Card back just by promising to keep guns out of political disputes. Rhein told Coffman in February 2011 that his threats to kill DeLuca had been meant only "to get people's attention." 118 F. Supp. 3d at 1098. But neither the Second Amendment nor the Due Process Clause requires public officials to be credulous.

Rhein does not deny that his statements were "true threats" within the meaning of *Virginia v. Black*, 538 U.S. 343, 359–60 (2003), and *Watts v. United States*, 394 U.S. 705, 707–08 (1969), so he could have been convicted for making them. A felony conviction would have established a long-term bar to gun ownership. See 18 U.S.C. §922(g)(1); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc). Rhein had every right to a prompt hearing, but if he had exercised that right without first assembling the sort of evidence Coffman had recommended, he was doomed to lose. Giving sound advice cannot be a source of constitutional liability.

We conclude that Coffman is not liable on the merits. This makes it unnecessary to consider whether it is "clearly established" (the central issue for an immunity defense) that the Illinois State Police as a whole took too long. The Supreme Court observed in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010), that many details about how to implement the Second Amendment need to be worked out. The timing of hearings on requests for the restoration of firearms is among those

details. We know from *Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004), and similar decisions that the First Amendment requires prompt decisions when the question is whether speech can occur. Meanwhile *Barker v. Wingo*, 407 U.S. 514 (1972), and similar decisions hold that the Speedy Trial Clause of the Sixth Amendment allows years to pass before a criminal trial, even when the defendant is in custody. Where the Second Amendment fits on this spectrum is a novel question. The closest parallel may be a motion under Fed. R. Crim. P. 41(g) for the return of guns seized in a criminal prosecution. As far as we can see, courts have not established time limits for holding hearings and making decisions on motions to return firearms. We need not resolve the timing question in this case either.

AFFIRMED

CERTIFIED COPY
A True Copy
Teste:
_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit